## COSMOS EXPLORATION COMPANY *v.* GRAY EAGLE OIL COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 217. Argued March 16, 17, 1903.—Decided May 18, 1903.

The general administration of the Forest Reserve Act, and also the determination of the various questions which may arise thereunder before the issuing of any patent for lands selected under the provisions of the act, are vested in the Land Department.

The courts cannot be called upon, in advance of, and without reference to, the action of the Land Department to determine the right and title of a person, who has surrendered lands under the act of June 4, 1897, and selected others, in the lands so selected, or to render a final decree determining the interest of the parties to the action in such lands, while the questions in relation to the title are still properly before the Land Department and have not yet been decided.

The Land Department has the statutory right to make rules and regulations, and the courts will take judicial knowledge of such rules and regulations as shall be made by it regarding the sale or exchange of public lands.

Whether it is necessary under the Forest Reserve Act for the selector, at the time of making his selection, to file in addition to his non-mineral affidavit, an affidavit that the land is not occupied in fact, is a question of law for the Land Department to determine, although such decision might not be binding on the court if such question properly arose in future liti-

gation. It is also for the Land Department to determine whether, if the land were not known to be mineral at the time of the selection, the fact that mineral in paying quantities was found thereafter would vitiate the selection.

THIS is an appeal from the decree of the Circuit Court of Appeals for the Ninth Circuit, affirming the decree of the Circuit Court for the Southern District of California, sustaining the defendants' demurrer to the bill of complainant, and dismissing the same. The questions arise under the act of June 4, 1897, making appropriations for the sundry civil expenses of the Government, etc. 30 Stat. 11, 36. The particular portion of the statute under which this litigation comes is set forth in the margin.[1]

The material facts averred in the bill are as follows: The assignor of the complainant, one C. W. Clarke, was on November 16, 1899, the owner in fee simple absolute of certain land in a forest reservation, non-mineral, and covered by a patent from the United States. On December 8, 1899, there were lands in the particular township described in the bill which for more than a year continuously theretofore had been surveyed, unappropriated and vacant public land of the United States, open to settlement, returned and characterized upon the official records of the United States as agricultural land, free and open to settlement and entry under the laws thereof. This land did not then contain any known minerals, salines, petroleum or mineral oils, nor had any minerals or petroleum or other mineral oils or mineral substances of any kind ever been discovered within the limits of such land, which was situated in the county of Kern, within the Southern District of California, and within

[1] Page 36. That in cases in which a tract covered by an unperfected *bona fide* claim or by a patent is included within the limits of a public forest reservation, the settler or owner thereof may, if he desires to do so, relinquish the tract to the Government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his claim or patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected: *Provided further*, That in cases of unperfected claims the requirements of the laws respecting settlement, residence, improvements, and so forth, are complied with on the new claims, credit being allowed for the time spent on the relinquished claims.

the district of lands subject to sale and disposition by the United States land office at Visalia, California. On November 16, 1899, Clarke relinquished the land in the forest reservation to the United States by deed recorded in the office of the county in which the land was situated, and on December 8, 1899, he duly delivered to the register and receiver of the United States land office at Visalia, California, and filed in that land office his deed to the United States, endorsed as recorded in the office where the land was situated, together with his selection of the land in lieu of the land relinquished, and at the same time he filed with the register and receiver a non-mineral affidavit showing the selected tract contained no known minerals, and he also delivered to and filed with the register and receiver an abstract of his title to the relinquished tract, duly certified as such by the recorder of the county in which the tract was situated, which abstract showed him to be the owner of the land by title in fee simple absolute, free of any lien or encumbrance at the time of such relinquishment and at the time the deed to the United States was made, and showed that his conveyance to the United States vested in the Government the full, complete and perfect title thereto. On the same day (December 8, 1899) the register and receiver of the United States land office at Visalia, California, duly accepted, received and filed the deed, abstract of title, non-mineral affidavit and the selection of the land made by Clarke, and duly entered the selection upon the official records of the land office, and the register of the land office then certified that the land so selected by Clarke was free from conflict, and that there was no adverse filing, entry or claim thereto, and Clarke thereupon and thereby became vested, as complainant averred, with the complete equitable title to the land so selected, and was thereupon and thereby entitled to receive a patent for the land from the United States in pursuance of that selection, under the terms and in pursuance of the provisions of the act of Congress above referred to. Clarke thereafter assigned and transferred to the complainant an undivided three quarters interest in the land taken in lieu of the relinquished land, and by virtue of the above selection the full, complete and equitable title to the so

selected land became immediately vested in the complainant's assignor without further act upon his part, and complainant by virtue of those acts and the assignment to it is now the complete and equitable owner of a three quarters interest in the land and entitled to a patent therefor.

(Clarke did not file any affidavit of non-occupancy of the land selected, so far as the record shows.)

It is then averred that this claim of the complainant is denied by the defendants, who assert that the land remained subject to entry, exploration, selection and purchase as mineral land, until a patent shall be issued to the complainant's assignor, and the complainant avers that the defendants since the selection have entered upon the land, bored for and obtained petroleum oil and are engaged in taking it therefrom.

It is also averred that the right and title of the defendants are based upon some one or more of four certain pretended placer mining locations which the bill describes, and which cover the land claimed by complainant, and that the defendants assert title to and the right to the possession of the land described in those placer locations from some or all of the locators thereof, but complainant alleges that these placer locations are illegal and void, because they were not based upon any discovery of mineral within the boundaries thereof, or of petroleum oil within such boundaries, until after the land had been selected by complainant's assignor Clarke.

That after the land had been selected by complainant's assignor, the defendants filed in the United States land office at Visalia, California, a written verified protest against such selection, in which protest it was alleged that the land selected by Clarke was not subject to selection by him under the act of June 4, 1897, above referred to, because the same was mineral land and was included within the boundaries of a valid placer mining location. The protest asks that the Commissioner of the General Land Office should order a hearing to determine the mineral character of the land and that the selection by Clarke be rejected and disapproved, and the bill specifically avers that such protest is now pending before the Commissioner of the General Land Office.

That the protest does not show there was any known mine, or that there were any known salines or any known or existing petroleum wells or known petroleum deposits on any of the land selected by Clarke at the time the land was selected, and it is averred that the protest, failing to show such facts, is insufficient to warrant or justify a hearing being ordered by the Land Department to reëstablish or redetermine the character of the land or to change the present classification thereof as fixed by the former report of the surveyor general and the confirmation thereof by the Land Department, and that such protest is insufficient to impair or affect the validity of Clarke's selection of the land; that notice of such selection by Clarke had been given and published on the — day of January, 1900, and that by law only sixty days are allowed to any person or persons to file protests in the local land offices of the United States against any selections under the law of June 4, 1897, and that the only protest or adverse claim filed against the selection was the protest of defendants above referred to, and that such protest does not state any facts which impair or affect the right of said Clarke or of the complainant in said selected land, nor does it show any grounds why a United States patent therefor should not issue to Clarke, and that defendants are bound and estopped by their protest and the contents thereof and the facts therein stated, and that if such facts be admitted they do not show that defendants, or any of them, have any interest in the lands as against Clarke or complainant, and it is averred that upon the facts as pleaded by the protest, the Land Department of the United States cannot lawfully refuse or deny the issuance of a patent to Clarke, and that upon such facts he is entitled to the approval of his selection by the Land Department of the United States and to the issuance of a patent therefor.

Notwithstanding complainant was the complete and equitable owner of the land and entitled to the quiet and uninterrupted possession of the same, so far as regarded the three quarters interest therein, yet the defendants herein, except Clarke, did, on or about February 1, 1890, and frequently since then, by themselves and their employés, without right, title or claim, wrongfully and unlawfully, and in disregard of the right of Clarke,

enter upon the land, erect derricks and other machinery thereon, and proceed to excavate the soil thereof and bore wells and drive iron pipes therein, seeking for petroleum oil and other mineral products in the land, for the purpose of taking the same, if found, to their own use, and removing the same; that thereafter, and on or about the last day of February, 1900, the defendants discovered in the wells petroleum oil in profitable quantities, and that the defendants are now wrongfully and unlawfully in possession of the premises, and unlawfully and continuously from day to day pumping large quantities of petroleum oil from the wells, and are about to and will, unless restrained by the court, remove the same from the land and sell and dispose of and market the same, and appropriate the proceeds thereof to their own use, to complainant's great loss and damage, and will continue so to do to the great waste and irreparable injury and damage of said property and the complainant, unless restrained therefrom by the court.

It was also alleged that the defendant Clarke is the owner of an undivided one quarter interest in the selected land described, and that complainant requested him to join with it in instituting and prosecuting this suit, but he refused to join herein, and therefore complainant made him a defendant in order that all the parties interested in the premises might be before this court and their rights finally adjudicated by a decree to be entered herein.

Upon these allegations complainant prayed for a writ of injunction restraining defendants from interfering with complainant's entry upon the land and enjoining defendants, other than Clarke, from excavating or digging upon the land for the purpose of taking petroleum oil from the wells thereon or from marketing or disposing of the oil, until the further order and decree of the court in the premises, and that upon final hearing the injunction should be made perpetual by an order and decree of the court.

It was also prayed that complainant might have the judgment of the court that the full and complete equitable title to an undivided three quarters interest in the property is vested in the complainant, and an undivided one quarter interest in Clarke, and that the adverse claims of defendants thereto should be decreed to be wholly without right and unfounded, and that

complainant have judgment for the possession of the land, and that a receiver should be appointed to take possession of the land and to preserve the same and the product thereof on the premises until the further order of the court, but not to operate the wells thereon except to the extent necessary, if at all, to preserve the same from deterioration in value, nor to market or remove any oil therefrom.

Upon the filing of this bill the court granted an order to show cause why the complainant should not have a preliminary injunction as asked for in the bill. The defendants appeared and interposed a demurrer to the bill, and upon the hearing of the order to show cause they presented a large number of affidavits, which in substance averred that the complainant was guilty of fraud and bad faith in locating the claim, and that such location was a fraud upon the statute under which it was assumed to be made. Affidavits in reply were filed by the complainant.

The demurrer was argued at the same time as the argument was had upon the return of the order to show cause, and thereafter on September 24, 1900, an order was made by the Circuit Court denying the application for a receiver and for an injunction, and a decree was also made sustaining the defendants' demurrer and dismissing the bill with costs, and on September 26, 1900, such decree was entered dismissing the bill.   104 Fed. Rep. 20.

An appeal was taken from the decree sustaining the demurrer and dismissing the bill, but none from the order denying the application for a receiver and for an injunction. As the appeal to the Circuit Court of Appeals was only from the decree overruling the demurrer and dismissing the complainant's bill, that court confined its discussion to the facts alleged in the bill.

After a hearing it affirmed the decree of the Circuit Court, 112 Fed. Rep. 4, and the complainant has by appeal brought the case here.

*Mr. T. C. Van Ness* and *Mr. Jefferson Chandler* for appellant. *Mr. John M. Thurston, Mr. Shirley C. Ward, Mr. M. A. Ballinger, Mr. Horace F. Clark* and *Mr. William C. Prentiss* were on the brief.

*Mr. John S. Chapman* for appellees. *Mr. Frank H. Short* was on the brief.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

An examination of the complainant's bill shows that it does not ask for an injunction until the decision of the Land Department upon the matters pending therein. The complainant ignores those proceedings so far as to claim now the final adjudication by the court, based upon its alleged equitable title to a three quarters interest in the land selected, and it avers that the Land Department cannot lawfully refuse or deny the issuance of a patent to Clarke. It avers that the protest filed by defendants is insufficient to impair or affect the validity of the selection of land made by complainant's assignor. The court is, therefore, called upon in advance of and without reference to the action of the Land Department, to determine complainant's right and title to the three quarters interest in the selected land, and a final decree is asked determining the interest of the parties in this land, while the question in relation to the title is still properly before the Land Department, and not yet decided. This we cannot do. *Marquez* v. *Frisbie,* 101 U. S. 473; *United States* v. *Schurz,* 102 U. S. 378, 395. If the Land Department has any jurisdiction over the subject matter, the question as to the sufficiency of the protest is one for the decision of that department, and its right to decide thereon is not taken from it by the averment of a legal conclusion contained in the complainant's bill that the department has no legal right to decide otherwise than in favor of the complainant upon the facts before it. But assuming that the question of issuing a patent is still and properly before the Land Department, the complainant avers that it has an equitable title to the land which will be protected by the court. Whether complainant has a full, complete and equitable title to the land is a question depending upon considerations hereinafter stated.

There can be, as we think, no doubt that the general administration of the forest reserve act, and also the determination

of the various questions which may arise thereunder before the issuing of any patent for the selected lands, are vested in the Land Department. The statute of 1897 does not in terms refer any question that might arise under it to that department, but the subject matter of that act relates to the relinquishment of land in the various forest reservations to the United States, and to the selection of lands, in lieu thereof, from the public lands of the United States, and the administration of the act is to be governed by the general system adopted by the United States for the administration of the laws regarding its public lands. Unless taken away by some affirmative provision of law, the Land Department has jurisdiction over the subject. *Catholic Bishop* v. *Gibbons,* 158 U. S. 155, 166, 167. There is no such law, and we must hold that the Land Department has full jurisdiction over matters involving the right of parties to a patent for lands selected under that act in lieu of lands relinquished in a forest reservation. By virtue of that jurisdiction the General Land Department has power to review and set aside (though not arbitrarily) the decisions of local officers relating to those questions, where such officers have power to make those decisions in the first instance. *Orchard* v. *Alexander,* 157 U. S. 372; *Bank* v. *Bladow,* 176 U. S. 448, 451; *Hawley* v. *Diller,* 178 U. S. 476, 490.

The Land Department also has power to adopt and did adopt rules and regulations for the administration of the forest reserve act. The power existed by virtue of the provisions of the Revised Statutes, sections 441, 453 and 2478. Courts will take judicial notice of rules and regulations made by the Land Department regarding the sale or exchange of public land. *Caha* v. *United States,* 152 U. S. 211, 221. The rules and regulations promulgated by that department for the purpose of carrying out the provisions of the act of June 4, 1897, are found in 24 L. D. 589, 592, and we think the rules set forth below are reasonable and entitled to respect and obedience as valid rules and regulations.

Among the rules it is provided :

"16. Where final certificate or patent has issued, it will be necessary for the entryman or owner thereunder to execute a

quitclaim deed to the United States, have the same recorded
on the county records, and furnish an abstract of title, duly
authenticated, showing chain of title from the Government
back again to the United States. The abstract of title should
accompany the application for change of entry, which must be
filed as required by paragraph 15, without the affidavit therein
called for. "

" 18. All applications for change of entry or settlement must
be forwarded by the local officers to the Commissioner of the
General Land Office for consideration, together with report as
to the status of the tract applied for. "

The " consideration, " mentioned in rule 18, is clearly not of
the character of a review of a decision already made by the
local land officers, but is in the nature of an original considera-
tion of the subject by the General Land Office, to which office
the final decision belongs. The *applications* are to be for-
warded, not a decision by the local land office, together with
a report (not a decision) as to the status of the land. This
rule makes it the duty of the local land officers merely to for-
ward the various applications to the General Land Office, and
an original decision is to be made by the latter office upon the
papers transmitted to it.

It will be noticed that the bill in this case alleges the pro-
ceeding before the local land officers and also that defendants
filed a protest, and that the questions raised thereby are still
before the Land Department and not yet decided. The com-
plete equitable title of the complainant is not therefore made out,
and cannot exist until a favorable decision by that department
has been made regarding the sufficiency of complainant's proof
of his right to the selected land. That question the depart-
ment is competent and it is its duty to decide. It may be that
when the decision of the Land Department is made, if it be fa-
vorable to the applicant, the complete equitable title claimed
will accrue from the time the selection of the lands was made
in the local land office, and when the patent subsequently is-
sues the legal title will vest from the time of selection. But be-
fore any decision is made how can there be an equitable title?

We do not think that by the act of 1883, 22 Stat. 484, the

local land officers were given any power to decide upon the sufficiency of the application in such a case as this. That act simply imposed upon them the duty of furnishing plats of townships showing what lands were vacant and what lands taken. It obviously referred to the lands that appeared vacant or appeared to have been taken on the records of their office. It did not assume to provide that no other lands could be taken than such as appeared so to be on those records.

The ground upon which complainant insists that it is the equitable owner of the land selected is that it has relinquished a title in fee in a forest reservation, and has selected in lieu thereof vacant land open to settlement, and that the local land officers duly accepted, received and filed the deed of the land relinquished, and the affidavit that the land selected was non-mineral, and that the officers duly entered such selection upon the official records of the land office, and then and there certified that the land selected was free from conflict, and that there was no adverse filing, entry or claim thereto. Complainant asserts that was all that it could reasonably do; that nothing remained on its part to do, and that when such is the case, the equitable title vests, and it is entitled to the protection of a court of equity to preserve and defend the title so acquired.

Counsel insists that the act of June 4, 1897, constitutes a standing offer on the part of the Government to exchange any of its " vacant land, open to settlement " for a similar area of patented land in a forest reservation, and that whenever a person relinquishes to the Government a tract in a forest reservation and places his deed to the Government of record as required by the Land Department rules, and selects in lieu thereof a similar area of vacant land, open to settlement, that such offer of the Government has thereupon been both accepted and fully complied with, and that a complete equitable title to the selected land is thereby vested in the selector.

But even the complete equitable title asserted by complainant must, as it would seem, be based upon the alleged right of the local land officers to accept the deed and approve the selection, even though such approval may be thereafter the subject of a review in the nature of an appeal from the action

of the local officers. There must be a decision made somewhere regarding the rights asserted by the selector of land under the act, before a complete equitable title to the land can exist. The mere filing of papers cannot create such title. The application must comply with and conform to the statute, and the selector cannot decide the question for himself.

We do not see how it can be successfully maintained that, without any decision by any official representing the Government, and by merely filing the deed relinquishing to the Government a tract of forest reserve land and assuming to select a similar area of vacant land open to settlement, the selector has thereby acquired a complete equitable title to the selected land. The selector has not acquired title simply because he has selected land which he claims was at the time of selection vacant land open to settlement, nor does the filing of his deed conveying the land relinquished and the abstract of title with it show necessarily that he was the owner of the land as provided for by the statute. So far as his action goes, it is an assertion on his part that he was the owner in fee simple of the land he proposed to relinquish, and that the deed conveys a fee simple title to the Government, and also that he has selected vacant land which is open to settlement, and that therefore he is entitled to a patent for such land. These assertions may or may not be true. Who is to decide? Complainant asserts that if a decision be necessary before the vesting of a complete equitable title, that in that case the local officers are to decide that question, and by accepting the deed and making the certificate already mentioned, they have decided it, and thereupon, at all events, the complete, equitable title accrued, even though such decision were subject to a review by the Commissioner of the General Land Office and thereafter by the Secretary.

But, as has already been stated, there is nothing in the statute of 1897 which gives the local land officers the right to decide whether the selector has complied with the provisions of the act, and unless those officers had that power they did not acquire it by assuming to exercise it. We do not say they did so assume. They received, accepted and filed the deed, the abstract of title, the non-mineral affidavit and the selection as

made by Clarke. They entered that selection upon the official records of the land office and they certified that it was free from conflict, and that there was no adverse filing, entry or claim thereto; but it cannot be said that they decided that the selector had complied with the provisions of the statute or that he had done all that he ought to have done in order to acquire his alleged complete, equitable title.

Their certificate that the land was free from conflict was simply a certificate as to what appeared on the books of the local office, and the same may be said of the statement that there was no adverse filing, entry or claim thereto upon such books. No affidavit of non-occupancy was filed, and they did not certify that the land so selected was in fact vacant or un-occupied, nor did they assume to certify that the selected land contained no minerals, although an affidavit to that effect was presented to them. In truth, all that these local officers did was to certify that the selector had done certain things, and that the land selected was vacant and open to settlement so far as it appeared from the books of the local land office.

Taking into consideration, however, the fact that the statute did not vest the local officers with the right to decide upon the question of a compliance with its terms, and the further fact that the Land Department had adopted rule 18, above referred to, which provides for the forwarding of all applications for change of entry or settlement to the Commissioner of the General Land Office for his consideration, together with a report as to the status of the tract applied for, we must conclude that the action of the local officers did not, as it could not, amount to a decision upon the application of the selector, so that he became vested with the equitable title to the land he assumed to select. It is certain, as we have already remarked, there must be some decision upon that question before any equitable title can be claimed—some decision by an officer authorized to make it. Under the rule above cited that decision has not been made. The General Land Office has (so far as this record shows) come to no conclusion in regard to it.

The protest by the defendants was duly filed within the time permitted by the regulations of the office, and the questions

arising thereunder are, as stated in the bill, still pending before the General Land Office. Whether it was necessary, at the time of making the selection, for the selector to file in addition to his non-mineral affidavit an affidavit that the land was not occupied in fact, is a question of law for the Land Department to determine among the other questions to be decided by it. Its decision of any legal question would not, of course, be binding on the courts whenever such a question might properly arise in any future litigation. It is also for the Land Department to determine whether, if the land were not known to be mineral land at the time of the selection, the fact that mineral in paying quantities has been found since that time, will vitiate that selection.

In *Kern Oil Company* v. *Clarke*, 30 L. D. 550, 567, referring to the necessity of the filing of a non-occupancy affidavit, it was said :

" That a non-mineral affidavit should accompany the selection is not seriously questioned by appellant. It is just as essential that it should be accompanied by a vacancy or non-occupancy affidavit. Appellant's contention that the word 'vacant,' as used in the statute, means public lands which are not shown by the records of the local office or General Land Office to be claimed, appropriated, or reserved, cannot be accepted. Portions of the public lands may be occupied, and for that reason be not subject to selection, and yet there be no mention of their occupancy in the records of the Land Department."

Again, in *Gray Eagle Oil Company* v. *Clarke*, 30 L. D. 570, it was also held that under the act of June 4, 1897, it must be shown that at the date of selection the selected lands were unoccupied as well as non-mineral in character, and that until that proof was submitted a selector had not done that which converts the offer of exchange into a contract fully executed on his part whereby he secures a vested right in the selected land. It is unnecessary for the court to express an opinion as to the correctness of these views of the Land Department as stated in its opinion in the above cases.

What may be the decision of the Land Department upon these questions in this case, cannot be known, but until the various

questions of law and fact have been determined by that department in favor of complainant it cannot be said that it has a complete equitable title to the land selected.

Concluding, as we do, that the question whether the complainant has ever made a proper selection of land in lieu of the land relinquished, has never been decided by the Land Department, but is still properly before that department, the courts cannot take jurisdiction and proceed to decide such question themselves. The Government has provided a special tribunal for the decision of such a question arising out of the administration of its public land laws, and that jurisdiction cannot be taken away from it by the courts. *United States* v. *Schurz*, 102 U. S. 378, 395.

The bill is not based upon any alleged power of the court to prevent the taking out of mineral from the land, pending the decision of the Land Department upon the rights of the complainant, and the court has not been asked by any averments in the bill or in the prayer for relief to consider that question.

For the reasons stated, we think the bill does not state sufficient facts upon which to base the relief asked for, and that the defendants' demurrer to the same was properly sustained. The decree of the Circuit Court of Appeals must, therefore, be

*Affirmed.*

Petition for modification of judgment.  June 1, 1903.

MR. JUSTICE PECKHAM: *Ordered,* That the decree dismissing the bill in this case be modified by providing that the dismissal is without prejudice to such future proceedings as complainant may be advised, and as so modified, the decree is

*Affirmed.*

PACIFIC LAND AND IMPROVEMENT COMPANY *v.* ELWOOD OIL
COMPANY.

Appeal from the Circuit Court of Appeals for the Ninth
Circuit.

No. 218.   This case was argued with No. 217, *ante*, p. 301,
and by the same counsel.

MR. JUSTICE PECKHAM: This case is covered by the foregoing
decision, and the decree of the Circuit Court of Appeals herein
is, therefore,

*Affirmed.*

Petition for modification of judgment.   June 1, 1903.

MR. JUSTICE PECKHAM: *Ordered*, That the decree dismissing
the bill in this case be modified by providing that the dismissal
is without prejudice to such future proceedings as complainant
may be advised, and as so modified, the decree is

*Affirmed.*