UNITED STATES v. WHITTED et al.

(Circuit Court of Appeals, Eighth Circuit. July 30, 1917.)

No. 4792.

1. PUBLIC LANDS ⬅106(1)—FOREST RESERVE LIEU LAND SELECTIONS—CON-CLUSIVENESS OF ACTION OF LAND DEPARTMENT.

A finding by the Commissioner of the General Land Office, affirming that of the district officers, made after a contested hearing, and not appealed from, that land selected in lieu of land within a forest reserve was not coal land, but was properly subject to the selection made, is conclusive of such fact, and cannot be relitigated by the government after the issuance of patent, even though the technical issue, as made by the Land Department in the notice which was the basis of the hearing, was erroneously limited to the question of the known character of the land at the time the selection was made.

2. EQUITY ⬅273—AMENDMENT OF BILL—STATING NEW CASE.

A complainant cannot be permitted, under the guise of amendment, to make a new bill.

Stone, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Colorado; Jacob Trieber, Judge.

Suit in equity by the United States against Genevieve G. Whitted and others. Decree for defendants, and the United States appeals. Affirmed.

Eugene B. Lacy, Asst. U. S. Atty., of Denver, Colo. (Harry B. Tedrow, U. S. Atty., of Denver, Colo., on the brief), for the United States.

E. E. Whitted, of Denver, Colo. (Frederic Burnham, of Chicago, Ill., on the brief), for appellees.

Before CARLAND and STONE, Circuit Judges, and RINER, District Judge.

RINER, District Judge. In 1901 Allen M. Ghost held the legal title to 1,640 acres of land in Jefferson county, Colo., located in what was then, and is now, known as the "South Platte Forest Reservation." Pursuant to the provisions of an act of Congress approved June 4, 1897 (30 Stat. 36, c. 2), as amended March 3, 1901 (31 Stat. 1037, c. 831), which authorized the owner of land included within the limits of a public forest reservation to relinquish the tract to the government and to select in lieu thereof a tract of vacant land open to settlement, not exceeding in area the tract covered by his claim or patent, Ghost, in May and June, 1901, conveyed this land by deed to the government, receiving as consideration therefor two forest lieu selection applications. The amendment to the act approved March 3, 1901, limited the lieu selection to vacant, surveyed, and nonmineral public lands subject to homestead entry. May 27 and June 17, 1901, Ghost filed said forest lieu selection applications upon the lands in controversy, located in Las Animas county, Colo., in the United States land office at Pueblo, Colo., together with the nonmineral affidavit and proofs required by

the acts of Congress above referred to and the rules and regulations of the Land Department. No further action was taken in regard to these selections until the 26th of July, 1906. On that date the General Land Office, through the register and receiver of the local land office at Pueblo, notified Ghost by letter that a special agent of the General Land office had made a report to that office to the effect:

"That upon numerous subdivisions embraced in said lieu selections coal crops and coal measures of varying thicknesses were found of merchantable quality and workable quantity; that such coal croppings were well and plainly to be seen at the date of the selection."

The notice further required Ghost to advise the local land office within 30 days whether he denied the truth of the charges and desired a hearing to defend his entry, stating that his failure to apply for the hearing within the time specified would be taken as an admission of the truth of the charges against his entry, and that the entry would be rejected. In response to this notice, and within the time specified, Ghost filed with the register and receiver of the local land office at Pueblo a denial of the truth of the charges contained in the special agent's report and demanded a hearing in defense of his lieu selections. Pursuant to this demand a hearing was had in December, 1906. Six witnesses testified for the government and seven witnesses testified for the applicant for the land. The testimony, which was reduced to writing, was filed in the local land office, and in March, 1907, the register and receiver, after setting out their findings of fact at length, recommended that the lieu selections be relieved from suspension and approved for patent. Thereafter the entire record, including the findings and recommendations of the register and receiver, all of the testimony, documents, proofs, and briefs submitted at the hearing, were forwarded to the Commissioner of the General Land Office at Washington. On the 27th of June, 1908, the Commissioner affirmed the findings and conclusions of the register and receiver, and, no appeal having been taken to the Secretary of the Interior, directed that patents be issued for the lands, which was done, the patents being delivered on the 10th of August, 1908.

August 8, 1914, the government filed its bill to set aside these patents, on the ground that the affidavits and proofs offered in support of the forest lieu selection applications, to the effect that the lands were nonmineral, agricultural lands, and contained no deposit of coal, were false, and known to be false by the applicant and those making the affidavits at the time the application was made; that these affidavits and proofs were made for the purpose of suppressing and concealing from the land officers the mineral character of the lands and thus fraudulently procuring title thereto; that the officers of the local and general land offices believed and relied upon these false and fraudulent representations, and were misled and deceived thereby; and that the said officers were, at all times prior to the issuance of the patents, ignorant of the mineral character of the lands, and believed that the lands were lawfully selected by the applicant, and on account of such belief, reliance, deception, ignorance, falsity and fraud, and not otherwise, issued the patents.

Allen M. Ghost having died, Genevieve G. Whitted, Catherine Hoover, Charles W. Tunnell, Ada M. Burnham, who claimed some interest in the lands, and the City Bank & Trust Company of Denver, as executor of the last will and testament of Allen M. Ghost, were made parties defendant to the bill. October 31, 1914, the defendants filed a joint and several answer, denying specifically every allegation of fraud contained in the bill, and, in paragraphs 12 to 16, inclusive, of the answer, set forth in detail all of the facts concerning the acquisition of the patents by Ghost, the contest proceedings had in the land office in 1906, including the findings and decisions of the register and receiver of the local land office and of the Commissioner of the General Land Office, and then alleged that the questions of fact involved in the hearing before the Land Office in 1906 were the same sought to be raised in this case, and, as such questions of fact were determined adversely to the government, that therefore the question before the court was res adjudicata in favor of the defendants, and pleaded such former adjudication as a defense to the bill.

After the answer was filed, the government moved to strike out paragraphs 13 to 16, inclusive (the plea of res adjudicata), on the ground that the matters therein set forth did not constitute an adjudication by the Land Department that the lands involved were at the time of the approval of the lieu land selection applications properly subject to acquirement from the government under its public land laws under which title to said lands was acquired. This motion was denied. The government then filed a motion for leave to amend its original bill of complaint. This motion was also denied.

August 28, 1916, the cause came on for a final hearing, which resulted in a decree dismissing the bill, and the government brought this appeal. At the final hearing the defendants, in support of their plea of former adjudication of the matters in controversy in this suit by the officers of the Land Department, offered in evidence the notice to Ghost of the contest filed against these selections, his denial of the truth of the charges therein, and his demand for a hearing; also a stipulation of counsel to the effect that, pursuant to the notice and demand for a hearing, a hearing was had; that at the hearing both parties were represented by counsel; that the testimony of six witnesses was taken on behalf of the government and the testimony of seven witnesses taken on behalf of Ghost. The defendants also offered in evidence the findings and conclusions of the register and receiver of the local land office, and the decision of the Commissioner of the General Land Office affirming the findings and conclusions of those officers. It was admitted by counsel for the government in open court that there was no appeal in this contest before the Land Office from the decision of the Commissioner to the Secretary of the Interior. It was further admitted that the patents were issued and delivered.

To meet the evidence offered by the defendants in support of their plea of former adjudication, the government offered in evidence two option agreements for the sale of the land in controversy between Allen M. Ghost and one E. B. Sopris. These offers were objected to, and the objection sustained. The government then offered the original transcript of the testimony and proceedings had before the Land

Office in December, 1906, to which an objection was sustained. It then made fourteen offers of proof, the first seven going to the character of the land, as to whether or not it was valuable for coal. The eighth was an offer to show that at the time of filing thereon, and at the date of the hearing, Ghost knew the lands were chiefly valuable for coal. The ninth was an offer to show that the option agreements between Ghost and Sopris were entered into in furtherance of the unlawful purpose of securing the lands. The tenth was an offer to show that the patentee procured false affidavits as to the nonmineral character of the lands at the time, knowing these affidavits were false. The eleventh, twelfth, thirteenth, and fourteenth were offers to show that the patentee procured false witnesses to testify at the hearing before the Land Office as to the nonmineral character of the land. The trial court excluded all of these offers and dismissed the bill.

[1] The real question sought to be reviewed, as suggested by counsel for the government in their brief, is the holding by the court below that the decision of the register and receiver, based upon the hearing before the local land office in December, 1906, and the approval thereof by the Commissioner of the General Land Office, was in fact such an adjudication of the nonmineral character of the lands involved as to be conclusive of the issues in the present case. No formal pleadings were filed in the proceeding before the Land Office, but it is insisted by the government that the notice to Ghost of the contest and his denial and demand for a hearing narrowed the issues to the known character of the lands at the dates of the selection, and that the decision of the Land Department based thereon did not and could not determine whether or not the lands in question were, at the date of the hearing, properly subject to entry under the lieu land selection applications as noncoal, agricultural lands. That the officers of the Land Department did not consider the issues thus narrowed, and confine their investigations to the dates of selection, but, on the contrary, covered the entire time from the dates of selection down to the date of hearing, is shown by the record of the proceedings before them. The register and receiver made the following finding:

"While the testimony fails to show that there was any coal or any indications of coal on or adjoining said tracts at or before the dates of selections, it also fails to show that any discoveries on the lands or adjacent thereto have been made since such dates that would classify the lands involved herein as being chiefly valuable for the mineral (coal) contained therein, even at the date of this hearing."

And the Commissioner of the General Land Office, reviewing the action of the register and receiver upon the entire record, in his opinion said:

"The testimony has been carefully examined and no error found in your conclusions. It has not been shown that any of the 40-acre legal subdivisions embraced in the selections are chiefly valuable for coal or that they contain any workable deposits of coal. The testimony covered the time within the knowledge of the witnesses up to date of the hearing."

So that, regardless of the language used in the notice, it is perfectly clear that the investigation was not confined to the date of the selection, but included the entire time down to the date of the hearing.

That being true, and the question whether the land in controversy was or was not coal land being a question of fact, the determination of the question by the Land Department, in the absence of fraud, is final and conclusive on the courts. United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Shepley v. Cowan, 91 U. S. 330, 23 L. Ed. 424; United States v. Primrose Coal Co. (D. C.) 216 Fed. 553. It has often been decided that the sufficiency of the proof and the weight of the evidence in a contested hearing on the proposition as to whether the lands involved are or are not coal lands are matters within the jurisdiction of the Land Department, and its judgment thereon is final. It would, indeed, be a dangerous doctrine, creating great insecurity in titles, if the correctness of the action of the Land Department upon a matter decided by it, and over which it had jurisdiction, could, years afterwards, be assailed because of supposed errors of judgment upon the sufficiency of the evidence presented to that department in a contested hearing. Vance v. Burbank, 101 U. S. 514, 25 L. Ed. 929. In the case just cited the rule is stated thus:

"The appropriate officers of the Land Department have been constituted a special tribunal to decide such questions, and their decisions are final to the same extent that those of other judicial or quasi judicial tribunals are."

In the same case the court further said:

"It has also been settled that the fraud in respect to which relief will be granted in this class of cases must be such as has been practiced on the unsuccessful party, and prevented him from exhibiting his case fully to the department, so that it may properly be said that there has never been a decision in a real contest about the subject-matter of inquiry. False testimony or forged documents even are not enough, if the disputed matter has actually been presented to or considered by the appropriate tribunal. * * * The decision of the proper officers of the department is in the nature of a judicial determination of the matter in dispute."

See United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93; Steel v. Smelting Co., 106 U. S. 450, 1 Sup. Ct. 389, 27 L. Ed. 226; United States v. Primrose Coal Co. (D. C.) 216 Fed. 553.

In reply to the suggestion made at the argument that the Department of the Interior raised a false issue through a mistaken interpretation of the law which invalidates the plea of res adjudicata, it may be said: (1) The issue at all times before the Land Office was as to whether the lands entered were coal lands, and even if we assume that the department did limit the scope of the evidence upon this issue to the appearance of the lands sought to be entered and that the department erred in thus limiting the scope of the evidence upon the issue as to whether the lands were coal lands or not, this fact would not render the judgment of the Land Office any the less res adjudicata. To hold that a judgment pleaded as res adjudicata could be destroyed by showing that the court which rendered it erred in the exclusion or admission of evidence would be not only to create a court of appeals out of every court where a judgment was offered, but destroy the whole principle upon which the doctrine of res adjudicata is founded. (2) The evidence which the department directed to be taken was in strict accordance with its rule as to the determination of whether the lands in controversy were coal lands or not, and this rule was in force when

the lands in question were entered and the patents therefor issued. The persons entering these lands had a right to rely upon this rule, and if it can be said that the decision in Diamond Coal Co. v. United States, 233 U. S. 236, 34 Sup. Ct. 507, 58 L. Ed. 936, enlarged the scope of the evidence admissible for determining whether land is coal land or not, that fact could not invalidate the judgment of the Land Office rendered prior to the decision in that case or permit a court of equity to charge the entrymen of the lands in question with the duty of knowing more than the Department of the Interior itself.

The government having had a full hearing as to the character of the lands in controversy in the contest proceeding before the Land Office, with opportunity to show, if it could, that the lands were coal lands, not subject to entry under the lieu selections, either at the date of selection or at the date of the hearing, we think the trial court rightly held that that question was not open to relitigation in the courts. Neither do we think that the trial court committed error in denying the motion of the government to amend its bill. The proposed amendment is set out in the record, and an examination of it discloses that it bases the right to recovery upon grounds entirely different from those stated in the original bill. The theory of the original bill was that the officers of the government had been deceived and had been induced to issue the patents by false affidavits filed in support of the lieu selections, while in the proposed amendment the right to relief is based upon the allegations that the officers of the Land Department were induced to issue the patents by (1) false testimony procured by the patentee and offered at the hearing before the local land officers; (2) because of the misunderstanding by the land officers of the effect and purport of the evidence given at the hearing; and (3) that these officers acted under a misapprehension of the land law, especially as to what was and what was not evidence that the lands contained coal in merchantable quantities.

[2] The rule is too well settled to require the citation of authority that under the privilege of amending a party is not permitted to make a new bill. While much liberality of amendment should be shown where the bill is found defective in proper parties, it its prayer for relief, or in the omission or mistake of some fact or circumstance connected with the substance of the case, but not forming the substance itself, yet to insert a wholly different case. as is attempted by this proposed amendment, is not properly an amendment, and should not be considered within the rules on that subject.

The testimony offered by the government at the final hearing all related to matters which were or might have been presented to the Land Department in the contest proceeding and was properly excluded.

Finding no error in the record, the decree dismissing the bill is affirmed.

STONE, Circuit Judge (dissenting). After the selection of the lands here involved there was a hearing before the proper department officials. This hearing was based upon a letter from the department to the selector. The only objection raised therein to the selection was:

"That upon numerous subdivisions embraced in the above selections coal crops and coal measures of varying thicknesses were found of merchantable quality and workable quantity; that such coal croppings were well and plainly to be seen at date of selection."

This was the only charge the selector was called upon to meet, and his denial thereof made it the sole issue which could properly be considered at the hearing. The findings of facts and decision of the register and receiver of the local land office clearly stated the scope of the issue involved as:

"July 13, 1906, the Commissioner of the General Land Office directed that a hearing be had on the charge of the Special Agent, that, 'upon numerous subdivisions embraced in the above selections coal crops and coal measures of varying thicknesses were found of merchantable quality and workable quantity; that such coal croppings were well and plainly to be seen at date of selection.' * * * It is charged in the order of hearing that coal measures of varying thicknesses and of merchantable quality and workable quantity were found upon said lands and that said croppings were well known and plainly to be seen at the date of selection."

The affirmation by the Commissioner of the above findings of facts and decision also defined the basis of the hearing to be:

"That upon numerous subdivisions embraced in the above selections coal crops and coal measures of varying thicknesses were found of merchantable quality and workable quantity; that such coal croppings were well and plainly to be seen at date of selection."

Thus the issue in the department inquiry was simply and solely whether at the time of the selections there were evidences of the coal bearing quality of the lands to be seen upon the lands themselves. This was a false issue raised by the department through a mistaken interpretation of the law. The only objection of this character which the department could properly raise against the selections was that they were coal lands; and undoubtedly that was the issue it attempted to make. But its definition of what it took to constitute coal lands within the statute was too narrow. As said by Justice Van Devanter in a notable opinion in Diamond Coal Co. v. United States, 233 U. S. 236, 34 Sup. Ct. 507, 58 L. Ed. 936:

"An exposure to the eye of coal upon the particular lands was not essential to give them a then present value for coal mining."

And again:

"There is no fixed rule that lands become valuable for coal only through its actual discovery within their boundaries. On the contrary, they may, and often do, become so through adjacent disclosures and other surrounding or external conditions; and when that question arises in cases such as this, any evidence logically relevant to the issue is admissible, due regard being had to the time to which it must relate."

A decision of the department upon a matter of law is always reviewable, in the sense of not being binding upon the courts as res adjudicata. Diamond Coal Co. v. U. S., supra; Cosmos Co. v. Gray Eagle Co., 190 U. S. 301, 23 Sup. Ct. 692, 47 L. Ed. 1064. It is true that a portion of the testimony and some of the findings before the department took a wider scope than the presented issue warranted; but it is the issue, and not the testimony nor the findings, which de-

fine the outside limits of the controversy. Lee v. Johnson, 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570.

In my opinion, this objection is not met by saying that to permit a judgment of the department to be overturned for any error of the department in limiting the scope of the evidence would be to destroy the principle upon which the doctrine of res adjudicata is founded and turn the courts into tribunals of appeal from the department. Errors of admission or exclusion of evidence usually deal with the materiality or pertinency of the testimony to the issues as made by the pleadings. If that were the case here, so that the only question would be one of adjective law, then the statement would be patently true. This, however, is not an instance of rulings on or scope of evidence in any such sense, but of the scope of the issue to be covered by the evidence and to be ultimately decided.

Nor can it be said, because the department acted in strict accordance with its rule in force at the time of the hearings, that the entryman is protected. These departmental rules are entitled to much consideration, because worked out by men who are experts by learning and experience in dealing with such matters (Heath v. Wallace, 138 U. S. 573, 11 Sup. Ct. 380, 34 L. Ed. 1063); but departmental rules cannot supersede congressional enactments. Nor are such rules controlling in the particular cases in which they are challenged in the courts. A decision nullifying such a rule is not alone the law governing future departmental action, but it is equally effective in the controversy which gives rise to it.

For this error of law by the department, the court should have denied the plea of res adjudicata, and heard the case below upon the other issues presented by the pleadings.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes