**UNITED STATES ex rel. FAULL v. ICKES, Secretary of the Interior.**

**No. 6444.**

United States Court of Appeals for the District of Columbia.

March 9, 1936.

F. W. Clements, of Washington, D. C., for appellant.

J. Kennard Cheadle and Frederic L. Kirgis, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

VAN ORSDEL, Associate Justice.

Appellant, plaintiff below, filed a petition for writ of mandamus to compel the Secretary of the Interior to allow a desert-land entry of lands situated in the state of California, and to issue a certificate therefor.

It appears that one James P. Faull, in 1921, filed his declaration of intention to reclaim a tract of desert-land under the Act of Congress of March 3, 1877, 19 Stat. 377, as amended by the Act of Congress approved March 3, 1891, 26 Stat. 1095 (43 U.S.C.A. §§ 321–323, 325, 327–329), commonly known as the "Desert-Land Act." To the petition defendant answered. Plaintiff demurred to the answer, the court overruled the demurrer, and the case was heard upon bill and answer.

From an order of the court dismissing the petition this appeal was taken.

It appears that plaintiff, in compliance with the statute, filed with his application a map showing a plan for the reclamation of the land in question, in which he stated that he expected to obtain his water supply from Rush Creek and Silver Lake Reservoir, through the Silver Lake Canal and the Rush Creek Mutual Ditch Company's canal.

In March 1921, the Commissioner of the Land Office held the Rush Creek Mutual Ditch Company inadequate as a source of water supply for desert-land entries. It was found by the General Land Office that the Rush Creek Mutual Ditch Company was merely a distributing company, under contract to purchase water from another corporation, known as the Sierra Land & Water Company. The Commissioner disallowed plaintiff's application. Appeal was taken to the Secretary of the Interior.

Pending appeal, the Sierra Land & Water Company was engaged in litigation in the courts of the state of California with respect to its water rights. This resulted in suspending action on plaintiff's application until March, 1934. A final decision in the California litigation was reached by the

Supreme Court of that state on September 27, 1933, which was adverse to the claims of the Sierra company, holding that it possessed no enforceable right to the waters claimed by it. Sierra Land & Water Company v. Cain Irrigation Company, 219 Cal. 82, 25 P.(2d) 223.

After notice of the decision of the Supreme Court of California, the appeal was called for consideration by the Secretary of the Interior. The Secretary affirmed the Commissioner's decision on the ground that the Sierra Company had been held by the courts to have no right to the use of the waters relied on by it and essential to the operation of the proposed irrigation system.

Section 4 of the Act of 1877, as added by Act of 1891, § 2 (43 U.S.C.A. § 327), provides that: "At the time of filing the declaration hereinbefore in this chapter required the party shall also file a map of said land, which shall exhibit a plan showing the mode of contemplated irrigation, and which plan shall be sufficient to thoroughly irrigate and reclaim said land, and prepare it to raise ordinary agricultural crops, and shall also show the source of the water to be used for irrigation and reclamation."

It is contended by counsel for plaintiff that upon the filing of such an application nothing remains for the Secretary excepting the mere ministerial act of approving the application. In other words, if the application on its face complies with the requirements of the statute, merely to the extent of naming a source of water supply, that the Secretary has no power to investigate as to the adequacy of that source, or whether or not it will supply sufficient water to meet the requirements of the application, or whether or not the applicant has acquired a valid water right with sufficient source and supply of water to meet his requirements, under the provisions of the Desert-Land Act.

■ The Secretary of the Interior in 1914 promulgated certain regulations which have been in force and complied with by his successors in office until the present time. These regulations, among other things, required the applicant to accompany his application "by evidence satisfactorily showing either that the intending entryman has already acquired by appropriation, purchase, or contract a right to the permanent use of sufficient water to irrigate and reclaim all the irrigable portion of the land sought, or that he has initiated and prosecuted, as far as then possible, appropriate steps looking to the acquisition of such a right. If the applicant intends to procure water from an irrigation district, corporation, or association, but is unable to obtain a contract for the water in advance of the allowance of his entry, then he must furnish, in lieu of the contract, some written assurance from the responsible officials of such district, corporation, or association that, if his entry be allowed, applicant will be able to obtain from that source the necessary water. All applications not accompanied by the evidence above indicated will be rejected."

It is contended that the Secretary had no authority to require, as a condition precedent to the approval of an application for a desert-land entry, compliance with these regulations. In compliance with the regulations an investigation was made which disclosed that plaintiff was in truth and in fact without any available source of water supply that would be adequate to meet the requirements of the statute, or to supply water for the irrigation of the land in question. The whole case turns, therefore, upon the authority of the Secretary to promulgate the regulations, and to require of the entryman compliance therewith, as a condition precedent to the approval of the application. We think the Secretary clearly has this authority. The Secretary of the Interior is vested with broad powers in the duty of administering the public land laws of which the Desert-Land Act is a part. The authority is also vested in the Secretary to make appropriate regulations for the administration of the public land laws. Cosmos Exploration Company v. Gray Eagle Oil Company, 190 U.S. 301, 309, 23 S.Ct. 692, 47 L.Ed. 1064; Catholic Bishop v. Gibbon, 158 U.S. 155, 166, 167, 15 S.Ct. 779, 39 L.Ed. 931; Caha v. United States, 152 U.S. 211, 217, 218, 14 S.Ct. 513, 38 L.Ed. 415.

The necessity of reasonable regulations for carrying out the objects and purposes of the statute is essential to a due administration of the desert-land laws. It is in the public interest that such reasonable regulation should be enforced to prevent the entry of public lands for mere speculation or other fraudulent objects. Chaplin v. United States (C.C.A.) 193 F. 879.

■ But it is contended that the regulations place an additional obligation upon the applicant which is not required by the statute, in that it requires proof of an adequate

source of water supply. We think that this does not amount to an additional obligation, but merely to the supplying of evidence in support of the statutory requirements. In United States v. Morehead, 243 U.S. 607, 37 S.Ct. 458, 460, 61 L.Ed. 926, the trial court had dismissed an indictment for perjury on the ground that the affidavit on which the perjury was charged was not required by the statute, but was required only by an unauthorized regulation of the Department of the Interior. The affidavit had been filed in support of a soldier's application for homestead preference, the affidavit being required under a departmental regulation. The court, speaking through Mr. Justice Brandeis, upholding the validity of the regulation, said: "Defendant contends that this regulation, which has been enforced continuously for nearly thirty-five years, is invalid. Since the Land Department is expressly charged with the duty of enforcing the public land laws by appropriate regulations, and the regulation in question was duly promulgated, the assertion of its invalidity must be predicated either upon its being inconsistent with the statutes or upon its being in itself unreasonable or inappropriate. That the requirement of the soldier's affidavit to the facts essential to the existence of any right of the applicant under the law is both reasonable and appropriate can scarcely be doubted. United States v. Smull, 236 U. S. 405, 411, 35 S.Ct. 349, 59 L.Ed. 641, 643; United States v. Bailey, 9 Pet. 238, 255, 9 L. Ed. 113, 120. But defendant urges that the regulation is inconsistent with the statute, in that it adds to the requirements of the statute still another condition to be performed before the soldier can acquire his homestead; and hence is legislation, not regulation. But the regulation does not add a new requirement in exacting the affidavit, as in Williamson v. United States, 207 U.S. 425, 458–462, 28 S.Ct. 163, 52 L.Ed. 278, 294–297. It merely demands appropriate evidence that the proceeding is initiated— as the statute requires it must be throughout conducted—in good faith, for the single purpose of acquiring a homestead."

As we have frequently said, the writ of mandamus will not serve the purpose of an ordinary suit. It will only issue to compel the performance of a ministerial act, and where the obligation to act is peremptory and clearly defined. Applying the rule to the present case, there is no theory upon which the allowance of the writ could be sustained.

The judgment is affirmed.