[L. A. No. 2264.   In Bank.—August 11, 1909.]

# T. L. ROUGHTON, Appellant, *v.* HARRY L. KNIGHT, Respondent.

PUBLIC LAND—FOREST RESERVATION—SELECTION OF LIEU LAND FOR PATENTED LAND IN RESERVATION—REPEAL OF FOREST LIEU ACT—DEED TO UNITED STATES.—An owner of patented land situated within the limits of a United States forest reservation, who, in contemplation of effecting an exchange thereof under the provisions of the act of congress of June 4, 1897, commonly known as the "Forest Lieu Act," deeds his land to the United States as required by the regulations of the interior department, but who fails to make a lieu selection prior to the repeal of the provision of the act of June 4, 1897, authorizing the same, did not acquire a vested right to make a lieu selection, and the United States, not being bound to convey to him land subsequently selected by him as lieu, no trust could arise in his favor in respect to such land as against a subsequent patentee from the United States.

ID.—WHEN EXCHANGE IS INITIATED.—Under the act of June 4, 1897, it is the filing of the deed to the base land in the local land-office and the selection of land in lieu of that relinquished which initiates the exchange. Until that time the exchange is not initiated, and is merely a purpose in the private owner's intent.

APPEAL from a judgment of the Superior Court of Kern County. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Hannah & Miller, Rowen Irwin, and Maurice E. Power, *Amicus Curiæ,* for Appellant.

George E. Whitaker, for Respondent.

MELVIN, J.—According to the allegations of his complaint appellant owned 160 acres within a forest reservation. Desiring to exchange it for vacant public land of like extent, belonging to the United States, he sought to avail himself of the provisions of the act of Congress approved June 4, 1897, commonly known as the "Forest Lieu Act" [30 Stats. 34, U. S. Comp. Stats. 1901, p. 1541]. This act, so far as it pertains to the case here discussed, is as follows:—

"That in cases in which a tract covered by a patent is included within the limits of a public forest reservation . . . the owner thereof may, if he desires to do so, relinquish the tract to the government, and may select in lieu thereof a tract of vacant land open to settlement not exceeding in area the tract covered by his . . . patent; and no charge shall be made in such cases for making the entry of record or issuing the patent to cover the tract selected; . . ."

After the passage of the "Forest Lieu Act" the secretary of the interior promulgated a regulation by which the person contemplating an exchange under the terms of said statute was required to execute a quitclaim deed of his property within the forest reservation to the United States; to record said deed; and to furnish an abstract showing a chain of title from the government back again to the United States. It is averred in the complaint that on June 10, 1899, appellant recorded a deed of his property made in pursuance of the "Forest Lieu Act" and the regulation of the interior department to which reference has just been made; that on June 19, 1899, said deed and an abstract showing perfect title in the grantor were filed in the United States land-office at Visalia; that these documents were duly forwarded and received by the commissioner of the general land-office about June 25, 1899; that they were held in the commissioner's office until January 3, 1905, when they were returned to appellant; but that during the time of the retention of the deed and abstract no objection was made by the commissioner or any one else to their form or sufficiency. The complaint contains the further averment that on March 14, 1905, appellant filed in the land-office at Visalia his application in writing whereby he sought to select the land with reference to which this litigation is conducted; that this application was accompanied by the deed and abstract of title above mentioned; but that nevertheless the United States of America disregarding appellant's right, on or about November 15, 1907, issued and delivered its patent conveying to respondent the legal title to the land thus chosen by appellant in lieu of his property in the forest reservation. There is also a statement in the complaint that defendant at all times had full notice and knowledge of all things therein set forth. It is further asserted that the legal title to the property in question is held in trust by respondent for appel-

lant and the prayer is for a decree requiring conveyance to appellant of said title. To this complaint a demurrer was offered. It was sustained, and plaintiff refusing to amend, judgment went accordingly. From said judgment plaintiff appeals.

On March 3, 1905, Congress repealed that portion of the act of June 4, 1897, applicable to the exchange of lands within for public lands outside of forest reservations. This repealing act is in part as follows: "but the validity of contracts entered into by the secretary of the interior prior to the passage of this act shall not be impaired: Provided, that selections heretofore made in lieu of lands relinquished to the United States may be perfected and patents issue therefor the same as though this act had not been passed, and if for any reason not the fault of the party making the same any pending selection is held invalid another selection for a like quantity of land may be made in lieu thereof." [33 Stats. 1264, U. S. Comp. Stats. Supp. 1905: 348.]

It is admitted that plaintiff was not within the exceptions contained in the repealing act because he had no pending selection nor did he have any written contract with the secretary of the interior; but appellant is of the opinion that he obtained a vested right to make a selection of lieu lands as soon as he made and recorded his conveyance of his realty in the forest reservation according to law and that this vested right could not be cut off by the subsequent repealing statute.

The very question here presented has been considered by the secretary of the interior in the case of *Moses L. S. & R. Co.,* 34 Land Dec. 458. That case was one in its facts very similar to that here considered. The selector had complied with all the requirements of the act of June 4, 1897, but the selection of land in lieu of that which he had sought by deed to relinquish to the United States occurred after the adoption of the repealing act of March 3, 1905. His application was rejected solely because of the repeal by the last mentioned statute of the act of June 4, 1897. In that case, as here, counsel asserted that the partial performance by the selector of the method of procedure prescribed under the "Forest Lieu Act," entitled him to a completion of the transaction by the United States government, and that a refusal by the government to complete the exchange would be "tantamount to

the repudiation by the United States of its own solemn agreement." In reply to this contention the secretary of the interior says, in part:

"The act of March 3, 1905, repeals not merely the invitation to private owners to relinquish their lands, but all the other provisions looking to an exchange. An exchange is essentially a single contract. The rights in the things exchanged usually vest at the same point of time. (*Lessieur* v. *Price,* 12 How. (U. S.) 59, 74.) While the regulations under the act of June 4, 1897, require the private owner of such lands to record his deed and to prepare and file an abstract and deed at the time he makes his selection, it cannot be held that good equitable right to the land relinquished passes to the United States by record of the deed, for some officer of the United States must examine the title, pass upon its sufficiency, and accept it. (*Cosmos Company* v. *Gray Eagle Co.,* 190 U. S. 301, 312, [23 Sup. Ct. 692].) It is a general principle in the law of real estate that title does not pass until the deed is delivered to the grantee. Though acceptance of a title conveyed is, under some circumstances, presumed from its being beneficial to the grantee, it will be seen from examination of such cases that there was a lapse of time with an entry into possession by the grantee, or other evidence of circumstances raising a presumption of the grantee's acceptance of the conveyance. No case is cited, and none has been found by the department, where acceptance of a conveyance of title is presumed from mere filing of the conveyance for record by the grantor. If the grantee is bound to render an equivalent or consideration for the conveyance, it is manifest that to hold the grantee obligated to pay a consideration where he has not received the conveyance is unsound in principle as creating a contract which the grantee never actually considered or determined to enter into.

"The act of June 4, 1897, was a mere proposal for an exchange. No contract arises until a selection is made and the conveyance of the base tract is filed in the land department. Until it is so filed the United States can know nothing of it, and no officer authorized to act on part of the United States can determine whether such proposed exchange can be approved or not. There is not only no contract, but no existent facts from which a contract of exchange can arise.

It all rests solely in the one mind of the private owner as something he merely contemplates doing, and there can be for that reason no concourse of two minds, which is essential to the relation of contract. Under the act of June 4, 1897, it is the filing of the deed in the local land-office and the selection of land in lieu of that relinquished which initiates the exchange. Until that time the exchange is not initiated and is merely a purpose in the private owner's intent.

"A proposal may be withdrawn at any time before acceptance. That the act of March 3, 1905, was a withdrawal of the proposal of exchange hardly admits of question. Were it not so intended, the proviso was wholly unnecessary. If it was intended that selections might be made to satisfy all relinquishments of land made with intent in future to make selections then it was unnecessary to permit the perfecting of incomplete selections actually made, or to permit re-selections upon bases assigned in previous ones that failed without the selector's fault. The proviso necessarily implies that Congress intended to withdraw its general proposal of exchange, and to limit future selections to the specified excepted cases. Congress has plenary power over the subject of disposals of public lands, and the land department is without authority to dispose of public lands unless granted it by Congress."

We think that the views here expressed are sound and that they are conclusive of the question presented by the case at bar. If the United States government was not bound to convey .the land selected by plaintiff, obviously no trust could arise in his favor which might be enforced against defendant because any obligation upon the part of the latter would have to draw its force from the contract, if there were one, between the government and the selector; and it would be necessary additionally that. defendant should have full knowledge of such agreement.

There is nothing in the opinion of this court in *Farnum* v. *Clarke*, 148 Cal. 617, [84 Pac. 169], in conflict with this conclusion. In that case the question to be determined was whether or not a person desiring to dispose of his land under the "Forest Lieu Act" could compel his agent to whom he had intrusted the duty of selection and exchange specifically to perform the contract. The significant language of the opinion in that case is as follows:—

"When a locator under the act files his selection in compliance with the rules and regulations of the land department, and accompanies it with proof that the lands of which he makes selection are vacant and open to settlement, and these facts are true, the commissioner of the general land-office has no arbitrary right to reject the selection, but must approve it, and upon such approval the right of the selector to the land takes effect by relation as of the date of his original selection. (*Kern Oil Company* v. *Clarke*, 30 Land Dec. Dep. Int. 550.) When such an approval is had by the commissioner, the locator becomes the full equitable owner in the land selected, but it by no means follows that until then he had acquired no interest or right in the land by virtue of his selection. On the contrary, we are satisfied that he did. He was possessed of the right under the act to acquire public land, had exercised that right to become the owner of the particular land on which he filed the selection, and had done all that was required by him to do under the act in order to obtain a perfect title. Under these circumstances, if he acquired nothing more, he acquired at least an inchoate equitable right, a right which was capable of being enlarged into a complete title by the approval of the commissioner of the general land-office, and was a right which the land department itself, in effect, recognizes may be sold and assigned after such selection is filed. (*Matter of Mallory*, 31 Land Dec. Dep. Int. 213.)"

The language in that opinion has no application to such a problem as the one here presented, where Congress withdrew the land from exchange before an application had been made to set it apart.

There is no theory by which the duty of the commissioner of the general land-office to approve plaintiff's selection, if any existed, could be transferred to defendant; and unless defendant can be charged with responsibility for the omission of the commissioner to perform such duty, if there was one, there can be no trust which defendant is bound to execute. The demurrer was properly sustained and the judgment is therefore affirmed.

Henshaw, J., Lorigan, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.