[Civ. No. 5333. Third Appellate District.—April 8, 1935.]

FRED C. DOWNER, etc., Respondent, v. GRIZZLY LIVE-STOCK AND LAND COMPANY (a Corporation) et al., Appellants.

Walter S. Barrette, Ford Hendricks and Victor P. Showers for Appellants.

McAdoo & Neblett and Frank G. Swain for Respondent.

RANKIN, J., *pro tem.*—Defendants prosecute this appeal from a judgment quieting plaintiff's title to real property against the defendants and each of them. The case is submitted upon an agreed written statement of facts which may be summarized as follows:

The land involved is situated within the boundaries of the Santa Barbara national forest. United States patent was issued to Mary Stauch on May 5, 1904, and recorded in the office of the county recorder of Ventura County on November 29, 1904. About January 26, 1905, Mary Harris (formerly Mary Stauch) and C. W. Harris, her husband, endeavored to avail themselves of the privilege granted them by the Forest Reserve Lieu Land Act of Congress, of June 4, 1897, of exchanging their said patented land referred to as "base" land, for other vacant government land commonly designated as "lieu" land. Pursuant to the provisions of said act and in accordance with the rules of the department of the interior appertaining to the procedure in such cases, they executed a conveyance purporting to quitclaim and relinquish said "base" land of the United States. This conveyance contains the recital: "which land we desire to relinquish to the United States and select in lieu thereof an equal quantity of vacant land open to settlement as provided by the Act of Congress June 4, 1897", and was made "in consideration of the benefits acquired under the said Act of Congress", and at the same time, and as a part of the same transaction, for a valuable consideration, they issued two irrevocable powers of attorney whereby Andrew Morrow became their successor in interest and entitled to make a selection of "lieu" land in exchange for said "base" land.

On March 3, 1905, the act of June 4, 1897, was repealed. Three days thereafter Morrow filed his "lieu" land selection No. 527 in the United States land office at The Dalles, Oregon, together with the power of attorney hereinabove mentioned, and an abstract of title to said "base" land. Morrow's "lieu" land selection application was rejected as not filed in time, and following an appeal to the commissioner of the United States land office, wherein the rejection was sustained, the application was finally canceled by letter "R," dated March 8, 1907. From this date on to November 22, 1926, so far as shown by the record, Morrow exercised no acts of ownership or dominion over said land by possession, payment of taxes, or otherwise.

On November 15, 1917, C. M. Bruce, assistant commissioner of the general land office, at Washington, D. C., wrote to Walter K. Slack, as agent for plaintiff, that as the cancellation of the selection was a refusal of the government to accept the reconveyances, title did not pass from Mary Harris, and that the government disclaimed either ownership or jurisdiction over the land.

Congress passed the act of September 22, 1922 (42 Stat. 1017), for the relief of those who had been dilatory in their filings for "lieu" land under the act of June 4, 1897. About November 22, 1926, Morrow made application to the commissioner of the general land office under the provisions of this relief act for the reconveyance to him of the said "base" land, and having submitted proof of his claim, the commissioner, on February 9, 1928, issued a quitclaim and relinquishment to Andrew Morrow, his heirs and assigns, of all title to the said lands which the United States may have acquired by virtue of that certain deed executed by Mary Harris and her husband on January 26, 1905. This quitclaim was duly recorded in February, 1928, and in September of that year, Morrow conveyed the land to defendant, Grizzly Livestock and Land Company, by warranty deed.

It further appears that said land was assessed to plaintiff, Fred C. Downer, for the fiscal year 1918–1919, and sold to the state for taxes levied thereon for that year and redeemed in 1920 by F. C. Downer. The land was again sold to the state for nonpayment of taxes for the year 1921–1922, and thereafter deeded to the state by the tax collector. On May 4, 1928, by tax collector's deed, title passed from the state

of California to Streeter D. Knipe, and on September 23, 1930, he conveyed his interest in the property to Fred C. Downer, the plaintiff.

No question is raised as to the regularity of the tax deed nor is any claim of title by prescription made.

Respondent claims, and the trial court found as a conclusion of law, that the United States never accepted the deed whereby the Harrises, in 1905, attempted to quitclaim and relinquish to the United States the property described therein and in the complaint, and that said real property then was, and at all times thereafter has remained, subject to taxation under the laws of the state of California.

Appellants take the position that during all the time subsequent to the date of the Harris deed and up to February 9, 1928, title to the land was vested in the United States and was not subject to taxation. They base their argument upon the assumption that the solution of the problem rests upon the interpretation of the three acts of Congress hereinabove referred to.

Briefly stated, the only question to be determined is whether or not the United States ever accepted title to the "base" land. If title passed and became vested in the United States, of course no tax could be levied, and plaintiff's title, based upon the tax deed, would be void. (Cal. Const., art. XIII, sec. 1; *Gottstein* v. *Adams*, 202 Cal. 581 [262 Pac. 314].)

The transaction by which the attempt was made to select other land in lieu of the Harris land was carried on under the provisions of the act of June 4, 1897, and rules and regulations governing the procedure in such cases promulgated by the land department pursuant to its power and authority, of which the courts will take judicial notice. (*United States* v. *McClure*, 174 Fed. 510; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.*, 190 U. S. 301 [23 Sup. Ct. 692, 24 Sup. Ct. 860, 47 L. Ed. 1064].)

Evidently Morrow complied with the rules and regulations prescribed by the land department and his application was properly filed, but the question here involves the legal effect of that procedure. A conveyance of real property must be accepted before title passes, and the fact that the United States is a party does not change or modify the rule. It must be remembered that the transaction took

place at a time when only the act of June 4, 1897, was in effect. It is difficult to understand how any claim can be made that the later acts, or any construction of the same, could affect the legal rights of any party, acquired under the provisions of the original act. It was evidently the purpose of the act of Congress to provide a means by which one owning land in a national forest reservation could make an offer to exchange his land for other vacant government land and carry on negotiations with the land department for the consummation of such exchange. Manifestly, the execution and recordation of the deed to "base" land, reciting upon its face the object and purpose of the execution of the deed, did not and could not constitute a contract between the grantor and the United States, but it simply evidences the readiness and willingness of the grantor to make the exchange. No title could pass until the application to select the "lieu" land is approved. This question is clearly decided in the case of *United States* v. *McClure, supra,* where the court said: "But the title does not pass to the land offered in exchange until the deed is accepted. The mere execution and recording of a deed and the tender thereof vests no title in the government. Until the deed and title are examined and approved it is a mere assertion by the applicant of his title and right to make the selection. (*Cosmos Exploration Co.* v. *Gray Eagle, supra; C. W. Clarke,* 32 Land Dec., Dept. of the Interior, 233; *W. E. Moses Land Scrip and Realty Co.,* 34 Land Dec., Dept. of the Interior, 458, 460.) But the equitable, if not the legal title remains in him. The deed and tender thereof amounts to nothing more than an offer by the owner to exchange one tract of land for another, and title does not pass to either party until the exchange is effected. Until the deed is executed the owner of the land offered in exchange retains title thereto, either legal or equitable, and the Land Department has no authority to determine the validity of the title offered if it is defective or there is some adverse claim thereto." To the same effect are the following cases: *State* v. *Hyde,* 88 Or. 1 [169 Pac. 757, 761, 171 Pac. 582, Ann. Cas. 1918E, 688]; *Roughton* v. *Knight,* 219 U. S. 537 [31 Sup. Ct. 297, 55 L. Ed. 326]; *Cosmos Exploration Co.* v. *Gray Eagle Oil Co., supra.*

It is therefore obvious that title never passed to the United States but remained in Mary Harris and that the

land was still subject to assessments and taxation under the laws of the state.

■ The Harris deed, upon its face, constitutes constructive notice to the effect that the deed was executed for the purpose of initiating the right to select "lieu" land in exchange for the land therein described. Appellants at all times had constructive notice of the status of the title to the property, and are not now in position to complain, for the reason that they took no steps to pay the taxes on the property, or otherwise protect their rights. They elected to ignore, through a long period of time, the right of the state to tax the property.

■ Appellants apparently contend that the act of September 22, 1922, being remedial in its nature, has the retroactive effect of establishing title in the United States as of the date of the Harris deed, and that said act circumvents the decisions of the Supreme Court. In this connection it must be remembered that there was a levy and delinquency of taxes upon the "base" land before the passage of this act. Certainly an act of Congress cannot nullify the decisions of the Supreme Court of the United States establishing property rights before the passage of the act by Congress. In support of their construction of the remedial act of September 22, 1922, appellants rely mainly upon the case of *Begue* v. *Grizzly Livestock & Land Co.*, 1 Fed. Supp. 229, decided by the United States District Court, Southern District of California, on September 15, 1932, and argue that it is determinative of the instant case because it establishes the rule that title vested in the United States upon the filing and recording of the Harris deed in 1905, and that therefore the prior decisions upon the subject may no longer be considered as authority. We cannot hold that the Begue case can be so construed. In that case, Begue, desiring to exchange his land for other lands, employed the procedure prescribed by the land department of the United States, and executed his relinquishment to the United States and power of attorney to one Sigler; in effect he sold the land to Sigler and the latter paid him at least a part of the consideration at the time, and whatever remained due in the way of consideration was a personal credit extended by Begue to Sigler. Sigler sold his right to Morrow, who was dilatory in making his selection, as he was in the instant case. After the date

of the so-called remedial act of Congress of September 22, 1922, Begue claimed title to the land on the ground that the same never vested in the United States. As between Begue and Morrow the commissioner of the general land office held that the latter should prevail, and issued his quitclaim deed to him. The point decided in that case was that the sale of the scrip, or right to exchange land, carried with it all of the rights of the vendor in and to the "base" land, as well as in and to the "lieu" land after the same was selected. Only the parties to the original transaction were claimants of the title to the "base" land. It is clear that Begue, after selling all his rights to the "base" land, and/or "lieu" land, and receiving payment therefor, could not prevail as against the vendee. The decision does intimate that title vested in the United States, but the intimation is purely dictum, as the question was not directly involved and the opinion fails to discuss or consider the line of decisions herein cited.

Respondent's title under the tax deed having vested under the law and decisions of the Supreme and Circuit Courts of the United States prior to the enactment of the act of September 22, 1922, that act cannot be construed as canceling or in any manner affecting the validity of that vested right.

The judgment is affirmed.

Thompson, J., and Plummer, Acting P. J., concurred.