[Civ. No. 5356.   Fourth Dist.   Nov. 15, 1956.]

LILLIE BUTLER, as Executrix, etc., et al., Plaintiffs and Respondents, v. J. R. HOLMAN et al., Appellants; G. M. RUSSELL et al., Cross-defendants and Respondents.

Ted R. Frame, Albert W. Dilling and Charles L. Gilmore for Appellants.

Aten & Aten, Henry T. Leckman and Rowell, Lamberson & Thomas for Respondents.

COUGHLIN, J. pro tem.*—In 1913, Aaron B. Butler received a patent from the United States government to land in Fresno County, described as the South one-half of the Southeast quarter and the South one-half of the Southwest quarter of Section 34, Township 18 South, Range 13 East, M. D. B. M. Upon his death the plaintiffs Butler were appointed executors of his will. Several years thereafter, the defendants James and Thickstun located the "Mistake Lode Mining Claim" upon a deposit of chrome ore which they contend is situated immediately south of the Butler property, in Section 2, Township 19 South, Range 13 East, M.D.B.M. They leased the mine to the defendant Holman. An extensive development program was undertaken resulting in the excavation of a large pit, by bulldozers, and the removal of several thousand tons of ore. The executors first learned of this mining activity through information furnished by some hunters, who had been in the vicinity. An investigation ensued which led the plaintiffs to believe that the mine was on the Butler property. Thereupon the complaint in this action was filed seeking damages for the ore removed; an accounting to determine the amount thereof; and an injunction to restrain any further trespass.

The defendants filed an answer and cross-complaint by which they denied the material allegations of the complaint; set up the defense of laches; sought to quiet their title to the mine; and asked for an injunction against the plaintiffs.

From a judgment in favor of the plaintiffs awarding damages in the sum of $161,558.23, the defendants appeal.

The primary controversy in this case concerns the location upon the ground of the south boundary line of the Butler property.

In 1879, W. F. Benson, a United States Deputy Surveyor, made a survey of Township 18 South, Range 13 East M.D.B.M. in which the Section 34 referred to in the Butler patent is located. The monument marking the southeast corner of said section is intact. However, the monument

*Assigned by Chairman of Judicial Council.

marking the southwest corner thereof cannot be found. In his field notes Benson, the surveyor, records a tie of this southwest corner to two trees: one to the southwest and the other to the northwest. From the section corner the tree to the southwest was described as a forked pine, 24 inches in diameter, bearing south 26 degrees west, 690 links distant, and the tree to the northwest was described as a pine 10 inches in diameter, bearing north $56\frac{1}{4}$ degrees west, 380 links distant.

In an effort to determine the location of the true south line of Section 34, the parties to this action caused several surveys to be made. Each resulted in a different boundary. In the course of these surveys, a surveyor by the name of Hardgrove found the fallen trunk of a forked pine tree which, undoubtedly, was one of the trees referred to by Benson in his field notes, for it carried the inscription "B T S 33 T 18 S R 13 E" (meaning, bearing tree—Section 33, Township 18 South, Range 13 East). Hardgrove identified this tree as the 24-inch southwest bearing tree described in Benson's field notes, and, using it as such, established the southwest section corner in question.

Shortly thereafter, a surveyor by the name of Ross discovered the root system and burned remains of another tree, farther to the south, which he identified as the 24-inch pine tree in question. On October 20, 1955, using this tree as the Southwest bearing tree described in Benson's field notes and using the scribed tree found by Hardgrove as the Northwest bearing tree described in those notes, and following the calls and distances recorded therein, Ross established what he testified was the southwest corner of Section 34.

The Ross section corner is south of the Hardgrove section corner.

Hardgrove never located a witness tree northwest of the corner which he established.

The trial court found that the corner established by Ross was the true section corner and described the southerly end line of Section 34 accordingly. The pit from which the defendants had excavated ore is north of this line; within Section 34; and on the property of the plaintiffs.

The defendants claim that, in accepting the Ross corner as the true section corner, the court found that the 24-inch forked pine tree referred to in the Benson field notes was not southwest of the corner, as recorded therein, but was northwest of the corner; that in so doing the court refused to

follow those notes, contrary to the rule of law which provides that the field notes of an approved government survey are conclusive on the owner of patented land described by the use of such survey (*Weaver* v. *Howatt,* 171 Cal. 302, 306 [152 P. 925]; *Chapman* v. *Polack,* 70 Cal. 487, 492 [11 P. 764]; *Trabucco* v. *Sorrels,* 113 Cal.App. 401, 403 [298 P. 521]; *Phelps* v. *Pacific Gas & Elec. Co.,* 84 Cal.App.2d 243, 247 [190 P.2d 209]).

The defendants' contention is based upon the false premise that the scribed tree, which the court found was northwest of the Ross corner, was the 24-inch forked pine tree referred to in the field notes. The evidence upon this point is in conflict. There is substantial proof, by fact and by inference, that this scribed tree was not the 24-inch forked pine tree in question. The finding in this regard is adequately supported by testimony from which the court could conclude that this tree was not 24 inches in diameter at the time of the survey, whereas the tree to the southwest, located by Ross, approximated this size; that the blaze on the scribed tree, when it was standing, faced in the direction of the corner as established by Ross, which connected it with that corner in view of the accepted custom of surveyors to cause the blaze on a witness tree to face the corner to which it is tied; and that this tree was in Section 33, requiring the common corner for Sections 33 and 34 to be to its southeast, because approved surveying practice required a tree to be marked to agree with the section in which it stands.

Contrary to the contention of defendants, the trial court did not change the position of any of the trees described in the field notes. Instead, it found that the remains of the tree described by Ross was the tree which Benson recorded as bearing southwest of the section corner, and that the fallen tree discovered by Hardgrove was the tree referred to as bearing northwest of that corner.

In addition to the testimony with respect to the bearing trees referred to in the field notes, there is other evidence that the location of the disputed section corner is at the place designated by Ross in his survey of October 20, 1955. In their opening brief, respondents cite eight different factual situations, supported by substantial evidence, each of which corroborates the finding of the trial court.

The defendants next attack the judgment on the ground that the amount awarded as damages is excessive.

The court found that the defendants converted in excess of

$600,000 worth of chromium and other substances which they had mined from the Butler property and from which they netted a profit of $161,558.23. The latter sum was awarded as damages.

It is contended that, at least, a part of the ore in question came from the defendants' property. However, this contention is based on testimony respecting the location of the mine in relation to a boundary line fixed by a survey which the court did not accept as establishing the true line. Although, in their opening brief, the defendants say that the award of damages is the result of either "passion and prejudice on the part of the trial court" or "pure speculation," yet, at the hearing before this court, they admitted that if the boundary line as established by the judgment was sustained, their claim that the award included damages for ore taken from their own property was without merit.

The trial of this case started October 17, 1955. At that time, the defendants still were conducting their mining operations, and continued to do so thereafter. The complaint alleged a continuing trespass, and asked for an accounting. ██ The defendant Holman furnished the Court with a statement of all sales up to October 3, 1955. This statement did not include payments for ore shipped before that date, upon which returns had not yet been made. The judgment was based upon an accounting up to October 3, and reserved to the plaintiffs the right to a further accounting, for ore removed after October 3, and for ore removed before that date but for which payment had not been received by the defendants. From the time ore is shipped to the mill, until payment is received by the shipper, it must be milled into concentrates which are shipped to a purchasing agency, which, in turn, makes certain tests preliminary to acceptance or rejection, and, if accepted, the price is fixed, depending upon the quality of the ore. It is apparent that the time and amount of payment are subject to many variable factors.

Although the court was authorized to adjust the rights of the parties up to the time of entry of judgment (*Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal.App.2d 409, 412 [65 P.2d 896]), under the circumstances of this case, it was proper to reserve to the plaintiffs the right to a supplemental accounting as "The relief administered in equity is such as the nature of the case and the facts as they exist at the close of the litigation, demand; . . ." (*Collins* v. *Sargent*, 89 Cal. App. 107, 112 [264 P. 776].)

It is further contended that the evidence does not sustain a finding that the defendants received a net profit of $161,558.23. The record contains substantial evidence from which it may be concluded that the amount of ore concentrates sold by the defendants was between 6,000 and 7,042.86 tons; that the average price of concentrates was between $100 and $115 per ton; that the total gross received for this ore was between $600,000 and $809,830 or more; that the actual return paid to James and Thickstun, as lessors, was $66,075.40; that $5,482.83 was paid to an investment group as interest on their investment; and that the actual return to the defendant Holman, as net profit, was an additional 15 per cent of the gross return. This evidence would support a judgment for as much as $193,032.73. The findings of fact are based on such of the evidence as established damages in the lesser sum of $161,558.23.

The defendants charge the trial judge with bias because he did not accept the testimony of Mr. Holman that his estimated profit was "somewhere between Sixty-eight and Seventy thousand dollars" instead of his testimony that such estimated profit was 15 per cent of a gross of $600,000, or $90,000. Stated thusly, the charge is reduced to an absurdity.

In this same vein, the defendants pose the question: "Was further bias shown when the trial court permitted plaintiffs to file late pleadings?" Reference is made to an order denying defendants' request to strike an affidavit and memorandum of authorities in connection with a motion for a new trial. The affidavit was in the nature of an argument rather than a statement of facts. The matters contained in the memorandum could have been presented orally at the hearing. It is not alleged that any prejudice resulted from this order and none appears from the record. The complaint is trivial and, even if well taken, is not cause for a reversal. (*Dam* v. *Lake Aliso Riding School*, 6 Cal.2d 395, 398 [57 P.2d 1315].)

As a defense to the equitable relief prayed for in the complaint, the defendants invoke the doctrine of laches. To sustain their contention that the adverse decision of the trial court on this defense was error, the defendants assume a state of facts contrary to the findings. The issue thus raised is the sufficiency of the evidence to sustain the findings in question.

In November, 1951, the premises now known as "Mistake

Lode Mining Claim'' were located as a Placer and described as being in Section 2 of Township 19 South, Range 13 East M.D.B.M. In May, 1953, the same property was located as a Lode.

Some development work took place after the original location, but the mine was not actually in operation until January, 1953. By the time this action was commenced an extensive operation was under way, and the mine pit had been opened to a hundred feet in depth.

The plaintiffs first learned that mining operations were going on in the general area in August, 1954. Thereafter they saw their attorney; caused a survey to be made; after this survey, by letter dated April 12, 1955, notified the defendants that they were operating on the Butler property; and in June, 1955, brought this action.

The land in question is hilly and covered with brush and trees. It has been used by one of the Butler brothers, for grazing purposes, under a lease from the plaintiffs. There is no evidence that either of the plaintiffs had seen the property from 1926 until 1955.

The defendants constantly have contended that their mine was not on the Butler property; refused to stop operations; obtained a preliminary injunction to prevent the plaintiffs from interfering with the same; and now, on appeal, still contend that their claim is located in Section 2 and not in Section 34.

Laches is an unreasonable delay in asserting a right which causes such prejudice to an adverse party as renders the granting of relief inequitable (*Cahill* v. *Superior Court*, 145 Cal. 42, 46 [78 P. 467].) In determining whether a delay has been unreasonable, the circumstances in each case must be taken into consideration (*Hiett* v. *Inland Finance Corp.*, 210 Cal. 293, 300 [291 P. 414]). Many factors may be involved, amongst which is the plaintiffs' knowledge of the defendants' wrongful acts (*Verdugo Canon Water Co.* v. *Verdugo*, 152 Cal. 655, 674 [93 P. 1021]; *Alexander* v. *State Capital Co.*, 9 Cal.2d 304, 313 [70 P.2d 619].)

There is no evidence that the plaintiffs knew that the defendants were operating a mine located in Section 34, until after the survey, following a consultation with their attorney. The defendants urge that the plaintiffs had constructive knowledge of this fact, because they had the means of knowledge, citing *Lady Washington Consol. Co.* v. *Wood*, 113 Cal. 482, 487 [45 P. 809]. Whether the plaintiffs had constructive

knowledge of the unlawful acts of the defendants, under the circumstances of this case, was a question of fact.

Likewise, whether any delay by the plaintiffs in bringing this action was unreasonable, also, was a question of fact, concluded by the finding of the trial court based on substantial evidence (*Newport* v. *Hatton*, 195 Cal. 132, 148 [231 P. 987]; *Williams* v. *Marshall*, 37 Cal.2d 445, 455 [235 P.2d 372]).

In addition, the record substantiates a finding that the defendants were not prejudiced by any alleged delay. ▆ Unless the party asserting the defense of laches had been injured by the delay complained of no prejudice has occurred. (*Alexander* v. *State Capital Co., supra,* p. 313.) It may be inferred that the defendants would have proceeded with the development of the mine regardless of the time suit was commenced. Moreover, the award in favor of the plaintiffs was limited to the net profits received by the defendants.

The appellants were given a fair hearing. They complain that the trial judge was biased. There is not the slightest basis for this contention. The findings about which the defendants complain are supported by adequate and substantial evidence. This case falls within the oft repeated rule that the weight of the evidence, the inferences to be drawn therefrom, and the credibility of witnesses are not matters for consideration by an appellate court. (*Hardin* v. *San Jose City Lines, Inc.,* 41 Cal.2d 432, 436 [260 P.2d 63]; *Chan* v. *Title Ins. & Trust Co.,* 39 Cal.2d 253, 258 [246 P.2d 632]; *Massow* v. *Gianaclis,* 120 Cal.App.2d 24, 27 [260 P.2d 655].)

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied December 10, 1956, and appellants' petition for a hearing by the Supreme Court was denied January 8, 1957.