[Civ. No. 20.   Fifth Dist.   Feb. 9, 1962.]

JOSEPH L. ROSENBERG, Plaintiff and Appellant, v. C. W. CLARKE COMPANY, Defendant and Respondent.

Francis L. Smee for Plaintiff and Appellant.

Maddox, Abercrombie, Kloster & Jacobus and Erling H. Kloster for Defendant and Respondent.

CONLEY, P. J.—This is an appeal in a quiet title suit from a decree denying plaintiff's claim to ownership and awarding the defendant 40 acres of land located in Redwood Canyon within the boundaries of General Grant Park in Tulare County. The pleading on both sides is simplicity itself. The complaint alleges that plaintiff is the owner in fee simple of the land in question and that the defendant corporation, without right, claims and asserts an interest therein adverse to plaintiff. The answer is equally brief. It denies that the plaintiff is the owner of the land, and alleges that the defendant is the sole owner in fee simple and entitled to the possession of the property and the whole thereof.

The evidence at the trial was as sketchy as the pleadings. The plaintiff introduced a series of documents in the form of powers of attorney but did not call any witnesses. The plaintiff, Joseph L. Rosenberg, was not personally present during the trial, and there was no testimony with respect to the circumstances under which the successive powers of attorney were executed.

In its findings the trial court determined that the defendant was the sole owner of the land in fee simple, and that the plaintiff had no right, title or interest therein and ordered judgment accordingly. A memorandum opinion, findings and judgment were filed; plaintiff's motion for a new trial was denied, and plaintiff appealed.

In the year 1900, C. W. Clarke, the then owner of the land, executed a deed in which the United States was named as grantee pursuant to the Forest Reserve Lieu Selection Act of June 4, 1897 (30 Stat. 36), and by so doing he gained the right, subject to the approval of the Government, to acquire other land in lieu thereof. On March 3, 1905 (33 Stat. 1264), Congress repealed that portion of the act of June 4, 1897, applicable to the exchange of lands within a forest reservation for other public lands, with exceptions not here applicable. Prior to the repeal of the act of June 4, 1897, Mr. Clarke had never made a selection of the lieu land, and no

selection or attempted selection was ever made by him or by any other person at any time thereafter.

On May 20, 1909, Mr. Clarke conveyed all of his real and personal property in California to the defendant corporation, C. W. Clarke Company. As Congress had already repealed the act which gave Mr. Clarke the right to select lieu lands in place of the forest land which he had theretofore tendered by conveyance to the United States, the effect of the repeal was to end all inchoate rights inasmuch as there had been no selection by Mr. Clarke of the land to be taken in place of that previously conveyed by him. In *Roughton* v. *Knight,* 156 Cal. 123 [103 P. 844], it was held that the repeal of the ''Forest Lieu Act'' had the effect of cutting off any right of the person whose land had been tendered by deed to select lieu lands and that title to the deeded land did not pass to the United States Government. The court held that there was no vested right to make a selection of lieu lands and that the repeal of the law terminated the privilege of the grantor to secure other land. The *Roughton* case, *supra,* was taken to the Supreme Court of the United States and was there affirmed. (*Roughton* v. *Knight,* 219 U.S. 537 [31 S.Ct. 297, 55 L.Ed. 326].) The United States Supreme Court held that when there was a tender by deed of land within a forest reservation to the United States Government unaccompanied by a choice of lieu lands, and there was no approval of the whole transaction by the proper federal officials before the repeal of the law, the grantor had no vested right to select lieu lands thereafter.

In *Downer* v. *Grizzly Livestock & Land Co.,* 6 Cal.App.2d 39, 42-43 [43 P.2d 843], in deciding a similar question, the court says:

''A conveyance of real property must be accepted before title passes, and the fact that the United States is a party does not change or modify the rule. It must be remembered that the transaction took place at a time when only the act of June 4, 1897, was in effect. It is difficult to understand how any claim can be made that the later acts, or any construction of the same, could affect the legal rights of any party, acquired under the provisions of the original act. It was evidently the purpose of the act of Congress to provide a means by which one owning land in a national forest reservation could make an offer to exchange his land for other vacant government land and carry on negotiations with the land department for the consummation of such exchange. Manifestly, the execution

and recordation of the deed to 'base' land, reciting upon its face the object and purpose of the execution of the deed, did not and could not constitute a contract between the grantor and the United States, but it simply evidences the readiness and willingness of the grantor to make the exchange. No title could pass until the application to select the 'lieu' land is approved. This question is clearly decided in the case of *United States* v. *McClure, supra* [174 F. 510], where the court said: 'But the title does not pass to the land offered in exchange until the deed is accepted. The mere execution and recording of a deed and the tender thereof vests no title in the government. Until the deed and title are examined and approved it is a mere assertion by the applicant of his title and right to make the selection.' "

(See also *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.,* 190 U.S. 301 [23 S.Ct. 692, 24 S.Ct. 860, 47 L.Ed. 1064]; *State* v. *Hyde,* 88 Ore. 1 [169 P. 757, 761, 171 P. 582, Ann. Cas. 1918E 688].)

It would seem clear, therefore, that the deed from Mr. Clarke to respondent effectively conveyed the title of the land in question to the C. W. Clarke Company. Thereafter, on April 24, 1917, the defendant corporation executed an instrument in the form of a power of attorney by which it named L. E. Chapin as its attorney in fact. The exact form of this document proves important in the decision of this case, and we shall therefore set it out in full:

"POWER OF ATTORNEY

"KNOW ALL MEN BY THESE PRESENTS:

"That Whereas, under and by virtue of the provisions of an Act of Congress approved June 4, 1897 (30 Stat. 36) as amended March 3, 1905 (33 Stat. 1264) C. W. Clarke Co., a corporation organized and existing under the laws of the State of California, is entitled to select an equal area of land in lieu of the NORTHWEST QUARTER OF SECTION THIRTY-FIVE (35) in Township FOURTEEN (14) SOUTH OF RANGE TWENTY-EIGHT (28) EAST OF MOUNT DIABLO MERIDIAN, STATE OF CALIFORNIA containing one hundred and sixty (160) acres which said land has been heretofore duly relinquished to the Government of the United States by deed of conveyance recorded in the proper county, said land being at the time of such deed included within the limits of a public forest reservation,

"NOW THEREFORE, this corporation has made, constituted

and appointed, and by these presents does make, constitute and appoint L. E. CHAPIN, of the City of Oakland, County of Alameda, State of California, the true and lawful attorney-in-fact for said corporation, in its name, place and stead to GRANT, BARGAIN, SELL and CONVEY by a deed or deeds sufficient to convey all of the right, title and interest that this corporation now owns, holds or possesses, and also all of the right, title and interest that it may hereafter acquire under said Acts of Congress of, in and to any land that has been or that may hereafter be selected as aforesaid, or any part thereof, on such terms and for such price as he may deem proper.

"And for all or any of the powers and purposes aforesaid, for said corporation and in its name to make, execute, acknowledge and deliver all necessary deeds, conveyances, or assignments, without warranty.

"GIVING AND GRANTING UNTO SAID attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as said corporation might or could do with full power of substitution and revocation, hereby ratifying and confirming all that said attorney-in-fact or his substitute or substitutes shall lawfully do or cause to be done by virtue hereof. PROVIDED, that this corporation shall not be liable for any expenses or costs under this power of attorney or otherwise in locating or perfecting title to the selected land, nor for any taxes, assessments, or other liens on the selected land,

"FOR VALUE RECEIVED, the receipt whereof is hereby acknowledged, this power of attorney is hereby made and declared to be irrevocable.

"IN WITNESS WHEREOF, this corporation has hereunto caused its name to be subscribed and its seal affixed by its Vice-President and its Secretary pro tem, being thereunto duly authorized by a resolution of the Board of Directors of said corporation which was unanimously adopted at a meeting of the said directors, duly called in accordance with the by-laws and held on the 6th day of August, 1909, which said resolution is as follows:—

" 'RESOLVED that the President or Vice-President in conjunction with the Secretary or Secretary pro tem, be and they are hereby authorized to sell and dispose of any real or personal property now owned by the C. W. Clarke Co. or

hereafter acquired, upon such terms and conditions as may be deemed advisable, and for the best interests of the company, and said President or Vice-President, in conjunction with the Secretary or Secretary pro tem, are hereby authorized and empowered to execute and deliver such contracts, deeds, releases, or satisfactions or such other instruments as may be necessary in the premises.'

"It is hereby certified that the foregoing resolution has not beed [*sic*] repealed or amended but remains in full force and effect.

"Dated at the principal place of business of said corporation in the City and County of San Francisco, State of California, this 24th day of April, 1917.

"C. W. CLARKE Co.,
"By    <u>Emma C. Baldwin</u>
          VICE-PRESIDENT.

"By    <u>W. P. Laufenberg</u>
          Secretary pro tem"

"Corporate Seal."

(Acknowledgment before notary public.)

It should be noted at this point that the instrument did not purport by its terms to give to the attorney in fact any power over or interest in the "base" land and that it did not give him the right to select any lieu land; it referred to the base land only to identify the lieu land which might be selected by the corporation. It should be noted further that this instrument was executed after the repeal of the provision of the original act of Congress which gave the right to select the lieu land and that, therefore, there was an absence of subject matter as to which the attorney in fact was given any right. The original power of attorney dealt solely with purported rights which did not at that time exist, unless the analogy of after acquired title should apply to this situation in that Congress later passed a series of enactments which gave certain ameliorative benefits to people who had not exercised their lieu rights while the act of 1897 was still in effect. The document purported to give full powers of substitution and purported to be irrevocable.

On May 17, 1917, Mr. Chapin executed a substitute power of attorney in which he named W. E. Moses as attorney in fact, authorizing him to convey land that "... has been or may

hereafter be selected. . . . '' by C. W. Clarke Co. in lieu of the base land.

On October 23, 1917, Mr. Moses executed a substitute power of attorney, naming G. E. Brimmer as attorney in fact, and restricting the description of the base lands to 40 acres, the southwest quarter of the northwest quarter of Section 35, Township 14 south, Range 28 east of the Mount Diablo base and meridian.

The next instrument in the line of documents under which the plaintiff claims is dated almost 13 years later, on April 19, 1930, when George E. Brimmer in turn executed a substitute power of attorney. From the document itself the conclusion may be drawn that it contained a provision as to rights identical with that in the preceding powers of attorney with the name of Roy Maggart inserted before execution, or that it was signed in blank and that the name of Roy Maggart was filled in later.  ██  In any event, someone, either before or after the signing of the document, eliminated the old grant of rights and completely changed the tenor and effect of the document by substituting a purported right to the base land in place of a right to the lieu land. If this document was prepared and executed by Mr. Brimmer in its present condition, it was an unauthorized and void change of whatever rights were previously held by Brimmer, because it purported to give the substituted attorney in fact a right relating to the base land rather than the lieu land. On the other hand, if the document was signed in blank by Mr. Brimmer and excisions and additions were made by Maggart, changing and enlarging the scope of the power, it was an unauthorized alteration of the document which rendered it void.

For this was a material alteration, as it changed the rights and duties of the parties (*Lasky* v. *Bew,* 22 Cal.App. 393 [134 P. 358]; *Southern Calif. Edison Co.* v. *Hurley,* 202 F.2d 257; *Consolidated Loan Co.* v. *Harman,* 150 Cal.App.2d 488 [310 P.2d 450]); and such a material alteration would extinguish all executory obligations of the instrument against parties who did not consent to the act. (Civ. Code, § 1700; *Bishop* v. *Rainboldt,* 79 Cal.App.2d 568 [180 P.2d 416]; *Commercial & Sav. Bank of Stockton* v. *Foster,* 210 Cal. 76, 81 [290 P. 583]; *Montgomery* v. *Bank of America,* 85 Cal.App.2d 559, 563 [193 P.2d 475]; 3 Cal.Jur.2d, Alteration of Instruments, §§ 12, 14, 15, pp. 205, 207, 208.)

The document in question reads as follows, with the portions which were stricken out shown in brackets with a line drawn

through the words and the portions added in ink shown in italics:

"SUBSTITUTE POWER OF ATTORNEY TO CONVEY.

"WHEREAS, under date of October 23, 1917, W. E. Moses constituted and empowered Geo. E. Brimmer of Rawlins, Wyoming, his substitute attorney-in-fact to grant, bargain, sell and convey by good and sufficient deed the *original base land of* [~~selected by~~] C. W. Clarke Company in [~~lieu of the~~] SENW, sec. 35, T. 14 S., R. 28 E., M. D. M., California, with full power of substitution;

"Now, THEREFORE, I, George E. Brimmer, substitute Attorney-in-fact for C. W. Clarke Company, do hereby appoint and constitute *Roy Maggart, unmarried* of *Statler Hotel, Washington, D. C.*, my substitute attorney and authorize him to act in my stead and to grant, bargain, sell and convey, all of the right, title and interest of the C. W. Clarke Company in and to the land above described, [~~selected by said C. W. Clarke Company under the Acts of June 4, 1897 and March 3, 1905,~~] in [~~lieu of the SE¼~~] NW¼, sec. 35, T. 14 S., R. 28 E., M.D.M., California, and to act for me as my substitute attorney, and to make, execute and acknowledge all necessary deeds and conveyances, or other instruments, of whatever kind or nature in this connection.

"GIVING AND GRANTING UNTO my said substitute Attorney full power and authority to do and perform all and every act and thing requisite and necessary as fully to all intents and purposes as I could do if personally present, with full power of substitution, hereby ratifying and confirming all that my said substitute Attorney shall lawfully do, or cause to be done by virtue hereof.

"FOR VALUE RECEIVED, the receipt whereof is hereby acknowledged, this substitute power of attorney is hereby made and declared to be irrevocable by me, or otherwise.

"IN WITNESS WHEREOF, I have hereunto set my hand and seal this 19th day of April, 1930.

"George E. Brimmer (SEAL)"

(Acknowledgment before notary public.)

The final substitute power of attorney, dated the 23rd day of December, 1958, and following the form of the preceding instrument, was signed and acknowledged by Roy Maggart in favor of Joseph L. Rosenberg, plaintiff and appellant herein.

These last two instruments departed completely from the substance of the powers of attorney which preceded them. In the original power of attorney to Chapin and the substitute powers of attorney prior to the Maggart document the rights granted pertained solely to the lieu lands which the Clarke Company might select by reason of the government legislation. The Maggart and Rosenberg powers of attorney attempted without any authority of the principal to change these rights completely so as to give the attorney in fact a definite interest in the base property.

A power of attorney is ". . . a written authorization to an agent to perform specified acts in behalf of his principal." (2 Cal.Jur.2d, Agency, § 30, pp. 677, 678; 2 Am.Jur., Agency, § 27, p. 30.)

"Powers of attorney, being formal instruments, are subject to strict interpretation. They must be construed in accordance with the plain import of the language of the document and the simple meaning of the terms used therein, without regard for extrinsic evidence. The authority conferred is not to be extended by implication beyond the natural and ordinary significance of the terms used; nor is the document to be construed as authorizing acts beyond those specified, unless such acts are absolutely necessary to carry out the powers expressly delegated." (2 Cal.Jur.2d, Agency, § 33, pp. 679-680.)

(See also *Golinsky* v. *Allison,* 114 Cal. 458 [46 P. 295].)

It would seem, therefore, that the trial court correctly found that the plaintiff had no right, title or interest in or to the land in question, unless the change in the wording of the instrument did not in fact enlarge rights already held by the successive attorneys in fact. As is said in *Cavitt* v. *Raje,* 29 Cal.App. 659, 661 [156 P. 519] :

"Any change made in a document after its execution, which merely expresses what would otherwise be supplied by intendment is immaterial, and the document is in effect unaltered by it."

One of the contentions made by the appellant is that while he holds no formal deed to the land, still by reason of an alleged but unpleaded and unproven custom and the interpretation of powers of attorney by other courts in two cases, these powers of attorney are to be construed in effect as deeds. The two cases are *Begue* v. *Grizzly Live Stock & Land Co.,* 1 F.Supp. 229, and *Sandpoint Lbr. & Pole Co.* v. *Anderson,* 32 Idaho 571 [186 P. 254].

In each of those cases, however, there is an important difference from the present suit, in that there were issued by the owner of the lieu rights to the contesting parties two powers of attorney, the additional one specifically giving to the person holding the power of attorney the right to select the lieu lands. In the present case there is no such right given by any instrument to Mr. Chapin, the person who originally held the power of attorney, or to any of his successors.

Furthermore, in the *Begue* case, *supra*, 1 F.Supp. 229, the federal government, after a contested hearing, had found in favor of the holder of the power of attorney, and great weight was given to this holding by the judge who heard the case in the federal court.

We now refer to some later measures passed by Congress relative to lieu lands. In 1922 (42 Stat. 1017, 16 U.S.C.A. § 483) Congress granted the right to exchange certain relinquished base lands for national-forest land which was unoccupied, surveyed, and nonmineral in character; if no exchange could be agreed upon, the Commissioner of the General Land Office could quitclaim to such persons, their heirs or assigns, all title to such lands which the respective relinquishments may have vested in the United States. (See *Peale* v. *Davis*, 19 F.2d 695 [57 App.D.C. 221]; *Work* v. *United States*, 26 F.2d 1002 [58 App.D.C. 224].) In 1930 (46 Stat. 257, § 6, 43 U.S.C.A. § 872, 1961 Supp.) Congress enacted legislation which provided that after a conveyance of land had been made and recorded on the basis of an expected exchange of lands and the application in connection with which the conveyance was made was thereafter withdrawn or rejected, the commissioner could execute a quitclaim deed of the conveyed land to the party. And in 1955 (69 Stat. 534) Congress enacted legislation which barred all rights to lieu. selections assertable under the act of March 3, 1905 (33 Stat. 1264), which were not presented to the Government for recordation and recognition within two years after the passage of the act, and legislation on July 6, 1960 (74 Stat. 334), repealed the act of September 22, 1922 (42 Stat. 1017, 16 U.S.C.A. § 483), cutting off the right to exchange relinquished base lands and preventing further reconveyance of base lands by the government; the act provided for the payment to the former owners of base lands accepted by the government the sum of $1.25 per acre, if application therefor should be made within one year of the effective date of the act.

The respondent took action to clarify its rights to the base land early in 1956 by employing one E. O. Buhler to follow the necessary procedure to obtain a reconveyance from the Government under the act of 1930. He forwarded an application, together with the necessary supporting documents to the Bureau of Land Management in Washington; after an investigation, the details of which are not set forth in the record but which was not marked by the filing of any conflicting claim by the plaintiff, the director of the Bureau of Land Management executed and delivered a quitclaim deed dated September 18, 1957, to C. W. Clarke, ". . . his heirs or assigns . . ."; by its terms it covered ". . . all right, title or interest in or to the following described lands which the United States may have acquired. . . ." This deed was recorded in Tulare County in October of 1957, and its contents thus became publicly known over a year before the plaintiff acquired his substitute power of attorney from Maggart in December of 1958. Neither Maggart nor Rosenberg ever filed any claim with the government or advised Buhler or the defendant of any contention that they had any right to the land prior to January of 1959. Taxes have been paid on behalf of the defendant ever since the reconveyance by the government.

Great weight is placed by respondent on the finding by the Bureau of Land Management that title to the land was in Mr. Clarke, his heirs or assigns. However, we do not rely on that factor, as the claim of Mr. Rosenberg was not there actually presented or adjudicated; furthermore, we believe that there is merit in the claim of Rosenberg that he is in effect one of the remote "assigns" of Mr. Clarke through action by his corporate successor.

Respondent argues that the appellant is barred by laches—such an unreasonable delay in asserting a right as to render the granting of relief inequitable. (*Butler* v. *Holman,* 146 Cal.App.2d 22 [303 P.2d 573].) The expenditures by Buhler in connection with his effort to secure a deed for Clarke, the fact that Rosenberg did not file a claim with the United States Government and that nothing was done by him or his predecessors toward asserting his alleged rights for many years, lend weight to the argument that it would be inequitable to make any award in his favor. The defendant, however, did not plead laches as a bar to recovery, and there is nothing in the judgment or findings or memorandum opinion which indicates that laches was relied on by the defendant in the court below or proved to the satisfaction of the chan-

cellor. In *Reed* v. *Norman*, 41 Cal.2d 17, 21-22 [256 P.2d 930] it is said:

"Defendants cannot rely on claims of estoppel or laches inasmuch as they failed to plead facts giving rise to those defenses, and there is nothing on the face of the complaint to indicate that any such facts existed. (See *Phoenix Mutual L. Ins. Co.* v. *Birkelund*, 29 Cal.2d 352, 363 [175 P.2d 5].)" (See also 18 Cal.Jur.2d, Equity, § 52, p. 226.)

To recapitulate: The trial court correctly found in favor of the defendant and against the plaintiff for the following reasons: the original power of attorney from the corporation to Chapin was restricted in its form to a right to sell lieu land which might be selected by the corporation, and there were not sufficient powers given as in the *Begue* case, *supra*, 1 F.Supp. 229, and the *Sandpoint Lbr. & Pole Co.* case, *supra*, 32 Idaho 571 [186 P. 254], to warrant an inference that the corporation intended to or did part with its right to the base land; the original power of attorney must be strictly construed in accordance with the general rule relating to such instruments; the respondent never selected any lieu land, and it is not claimed that there was any fraud on its part in failing to act; furthermore, at the time of the execution of the original power of attorney there was no right in the corporation, or in anyone else, to select lieu land, because the right contained in the original act had been eliminated by a new enactment of Congress, and the later remedial legislation, in the absence of any selection of lieu lands by the respondent, did not result in the initiation of any new right on the part of successive holders of the powers of attorney; secondly, even if it were assumed that the original Chapin power of attorney granted some right to him, the attempted change and enlargement of the right in the Maggart and Rosenberg powers of attorney made them void and of no effect. The trial court's conclusions as to the title were correct.

The judgment is affirmed.

Brown, J., concurred.

Stone, J., being disqualified, did not participate.